Plaintiffs-appellants James and Irene Lalak appeal from a judgment of the trial court following a bench trial in favor of defendants-appellees Cresmont Construction, Inc. and Terry Wilson.
This action was commenced on April 5, 1995, and arises from the collapse of a sloping hillside in a newly constructed housing development. Plaintiffs' complaint and first amended complaint alleged that defendants committed a trespass upon their property, known alternately as 8565 Timber Trail or sublot #142 in the Rockledge Estates subdivision in the City of Brecksville, Ohio.[1] The complaints alleged that on their property defendants placed a large quantity of soil, which ultimately caused the hillside to collapse. Also alleging that defendants' conduct was wilful and wanton, plaintiffs sought to recover punitive damages and attorney fees in addition to compensatory damages.
On October 3, 1996, after approximately one and one-half years of pretrial proceedings, the trial court scheduled final proceedings in preparation for trial. It scheduled a final pretrial for February 4, 1997, and trial for February 24, 1997. Following the final pretrial, the trial court journalized an order adhering to the scheduled trial date.
On February 12, 1997, one week thereafter, plaintiffs filed a motion for leave to file a second amended complaint to raise a claim of negligence in addition to their trespass and punitive damages claims. In an order journalized on February 20, 1997, the trial court denied this motion. On February 24, 1997, the date originally scheduled for trial, the trial court continued the date of trial by agreement of the parties.
The trial court subsequently scheduled a new trial date for April 8, 1997. Because of scheduling conflicts, the matter was transferred to a visiting judge for trial. Plaintiffs did not renew their motion for leave to file a second amended complaint either with the original trial judge or the assigned visiting judge.
The trial judge bifurcated the issue of liability from that of damages, and the matter proceeded to a trial concerning liability. During the six-day bench trial, plaintiffs presented eleven witnesses, defendants presented three witnesses, and each party presented numerous exhibits and photographs. Following deliberations, the trial court entered final judgment for defendants in a detailed seven-page typewritten journal entry. The trial court found that plaintiffs failed to prove by a preponderance of the evidence that defendants' conduct proximately caused the hillside erosion. Plaintiffs timely appeal, raising two assignments of error.
Plaintiffs' first assignment of error follows:
 THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO GRANT PLAINTIFFS' MOTION TO AMEND THE COMPLAINT TO INCLUDE A COUNT OF NEGLIGENCE, THEREBY FORECLOSING CONSIDERATION OF THE NEGLIGENCE OF DEFENDANT IN SURCHARGING PLAINTIFFS' SLOPE WITH FILL.
This assignment lacks merit.
Plaintiffs argue the trial court abused its discretion by denying their motion to file a second amended complaint. As noted above, they did not renew this motion prior to the trial rescheduled at the parties' request. Instead, plaintiffs proceeded to trial and requested at the conclusion of the trial that the trial court consider the additional claim of negligence.
The Ohio Supreme Court has summarized the principles governing appellate review of a trial court's denial of a motion to amend a complaint:
 This court's role is to determine whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made. State, ex rel. Wargo v. Price (1978), 56 Ohio St.2d 65, 10 O.O.3d 116, 381 N.E.2d 943. Not only is our role limited to review, but the review itself has narrow limits:
 "* * * We have repeatedly held that '[t]he term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " Huffman v. Hair Surgeon, Inc.
(1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252.
Cleveland Electric Illuminating Co. v. Wilmington SteelProducts, Inc. (1991), 60 Ohio St.3d 120, 122; see alsoEasterling v. Am. Olean Tile Co., Inc. (1991), 75 Ohio App.3d 846
(collecting cases); Meadors v. Zaring Co. (1987), 38 Ohio App.3d 97.
To constitute a reversible abuse of discretion under this standard, the trial court's ruling
 must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.
Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256. Reviewing the record in compliance with this "stringent" standard, we find that plaintiffs have failed to show an abuse of discretion.
As in Wilmington, the trial court could properly find in the case at bar that the three-page motion for leave to file the second amended complaint was not timely filed. In fact, the motion in the case at bar was even more belated than inWilmington, in which the Supreme Court reversed this court and held the trial court did not abuse its discretion by finding the motion was filed too late.
The motion in Wilmington was filed eleven days before trial, with a supplemental motion four days later, even though the action had been pending for nineteen months. Plaintiffs' motion to file a second amended complaint in the case at bar was not filed until four days prior to the originally scheduled trial date and approximately twenty-two months after the case was filed.
Plaintiffs' three-page motion did not provide any explanation for such an extended delay in filing their amended complaint to add a claim of simple negligence. The motion stated in relevant part, in its entirety, that "it appears based upon expert reports only recently received that defendants' actions also state a claim in negligence with respect to the plaintiffs in this case." Plaintiffs did not identify what expert reports, if any, revealed the basis for this claim.
Our review of the record reveals nothing to support the argument that evidence was newly discovered on which to base a negligence claim. From the outset of the case, plaintiffs knew of the requirement for expert testimony to support their claims and had approximately two years to determine the factual and legal basis for them. Although the defense expert report was not filed until approximately two months prior to trial, it absolved defendants and did not — under any stretch of the imagination — support a newly asserted claim of negligence against them.
Instead of addressing their own shortcomings, plaintiffs' brief on appeal seeks to shift the burden to defendants. They argue that defendants would not have suffered any prejudice from the belated amendment because defendants had the same two years to complete discovery and should have known that the trespass claim involved essentially the same discovery as a claim of negligence. (Brief at pp. 24-25.) However, plaintiffs' knowledge concerning the basis for filing their own claims was superior to that of defendants. Moreover, despite plaintiffs' protestations to the contrary, any claim of negligence had to have been known to exist at the outset of the case, particularly because they claimed defendants' conduct was wilful and wanton, a form of aggravated negligence.
Although the trial court subsequently accommodated the parties and delayed the trial for approximately one month, plaintiffs did not renew their request to amend the complaint. Renewing their request after the trial court agreed to reschedule the trial would have provided formal notice to defendants to conduct further discovery and refocus their defense, if the trial court considered and permitted the addition of new claims. Plaintiffs never renewed their motion before the trial began.
Finally, even if the trial court's ruling were an abuse of discretion as plaintiffs argue, they have failed to show any prejudice. Civ. R. 61. The record shows that plaintiffs requested the court permit them to introduce evidence of negligence subject to a subsequent motion at the close of the case to amend the pleadings to conform to the evidence. The trial court permitted plaintiffs to present the evidence they desired.
As noted by plaintiffs, there was considerable overlap between their trespass and negligence theories. A common element of both theories required plaintiffs to prove that defendants' conduct proximately caused the slope erosion. After considering all the evidence presented, however, the trial court concluded that plaintiffs failed to prove the element of proximate cause. Thus plaintiffs could not have recovered under a negligence theory even if the trial court had permitted them to amend their complaint to add this claim belatedly. Under the circumstances, by suggesting the trial court follow this procedure, plaintiffs invited any error and failed to demonstrate any prejudice from the trial court's action.
Accordingly, plaintiffs' first assignment of error is overruled.
Plaintiffs' second assignment of error follows:
 THE TRIAL COURT'S FINDINGS OF FACT AND GENERAL VERDICT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
This assignment lacks merit.
Plaintiffs argue that the judgment of the trial court following the bench trial was against the manifest weight of the evidence. They argue that the trial court should have found in their favor on liability for both compensatory and punitive damages.
It is well established, however, that reviewing courts must grant deference to the trial court's factual findings and will not reverse judgments based on such findings when they are supported by substantial, competent, and credible evidence as in the case at bar. Myers v. Garson (1993), 66 Ohio St.3d 610;Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77; C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279.
The sequence of events preceding this trial is briefly summarized as follows: Plaintiffs' property, sublot #142, had a steep original grade near its boundary with adjacent sublot #141. In June 1988, a sanitary sewer was installed and buried in an easement between the two properties. Plaintiffs thereafter purchased sublot #142. By May, 1990, without conducting a geotechnical or soil study on the property, they constructed a large residence near the slope. Plaintiffs' landscaper subsequently installed a wooden retaining wall near the base of that slope.
In September, 1991, defendants deposited a quantity of earth, excavated for a basement of another residence, onto plaintiffs' property and adjoining sublot #141.[2] The sanitary sewer buried under the slope malfunctioned two years later in October, 1993 and leaked fluid into the surroundings. The slope ultimately eroded. The sanitary sewer and erosion were corrected by installing a large auger retaining wall on plaintiffs' property in April, 1994. After these repairs, the slope again failed, sometime prior to trial in April, 1997.
A central dispute in the case was what caused the slope to erode: that is, whether it was caused by defendants' conduct or other factors. Although plaintiffs presented several expert and fact witnesses, the parties' dispute focused principally on conflicting opinion testimony by geotechnical experts concerning causation of the slope failure. Duane Schreiber, retained by plaintiffs, opined that the erosion was caused by defendants' placement of soil in the area. Fred Triggs, retained by defendants, testified to the contrary. No other witness expressed any opinion concerning causation of the slope failure.
The trial court found that plaintiffs failed to prove that the failure of the slope was proximately caused by defendants' relocation of the soil. After independently reviewing the record, we decline to substitute our judgment for that of the trial court.Id. The record contains independent, competent, credible evidence that the soil conditions in this area around the Cuyahoga River valley were unstable. The trial court also recognized that installation of an underground sanitary sewer, the subsequent failure of joints in the sewer, and the resulting discharge of moisture further increased the instability of the slope.
The trial court's journal entry states as follows:
 It is the finding and conclusion of the trier of facts that plaintiffs have failed to establish, by a preponderance of the evidence, that the event which took place in September, 1991 was the proximate cause of damage to their property.
 The Court further finds and concludes that the plaintiffs have failed to establish by a preponderance of the evidence that the minimal contact between defendants, Crestmont Construction, Inc. and Terry R. Wilson, and sublot #142 was the proximate cause of damage manifested 2-1/2 years following the trespass. As in any other civil case, plaintiffs must establish, not just an event, but that the event was a proximate cause of the resulting damage.
* * *
 The Court finds and concludes that there were other intervening and superseding causes of plaintiffs' damages. Sprin[g]steel v. Jones Laughlin Steel Corp. (1963), 2 Ohio App.2d 353.
 First, the Court finds and concludes that the slope at sublot #141 and sublot #142 has always been of impending instability. The Court considered the testimony of plaintiff's geotechnical engineering expert, Duane Schreiber, defendants' geotechnical engineering expert, Fred Triggs, and the City of Brecksville Engineer, Ron Courtney. These individuals all agreed that the geometry of the slope is reasonably severe and the geology of the soils is unstable. Mr. Courtney testified that because the soils are so varied, it is imperative that a property owner retain the services of a geotechnical engineer or soils expert to perform boring tests on the property. He so recommended in his written report.
 Second, the Court finds and concludes that the installation of the sanitary sewer from the right of way at Timber Trail along an easement between sublot #141 and #142 negatively influenced the stability of the slope. The installation of the sanitary sewer required trenching the existing slope to a depth approaching twenty feet. At certain points, the trench was ten to twenty feet wide. Subsequent to installation of the sanitary sewer line, the trench was backfilled with loose, organic material which was not compacted. The installation of the sanitary sewer increased the risk of slope failure.
 Third, the same sanitary sewer failed at a joint between the two pipes. Based upon the testimony of James Moser, the owner of sublot #141, the first notice of potential failure of the sanitary sewer was in October, 1993. The Court does not know what caused the sanitary sewer to fail. Richard Hunsinger, the Chief Engineer of the Cuyahoga County Sanitary Engineering Division, the County department responsible for installation, inspection, maintenance[,] and repair of sanitary sewers was not able to determine the cause of the sanitary sewer failure. Roosevelt Wallace and John Germosvek, employees of Great Lakes Construction, Inc., the company retained by the Cuyahoga County Sanitary Engineering Division to repair the sanitary sewer was unable to testify as to the cause of the sanitary sewer failure. Between the date the sanitary sewer failed and the date it was repaired in April, 1994, a substantial quantity of manmade moisture flowed from the sanitary sewer as [sic] its break into the slope. This increased the instability of the slope.
 The Court concludes that each of the above enumerated items constitutes a separate intervening and/or superseding cause of plaintiffs' damages. The Court cannot conclude, by a preponderance of the evidence, that the placement of dirt and subsequent removal of dirt by defendants, Crestmont Construction, Inc. and Terry R. Wilson, on sublot #142 in September, 1991, was a proximate cause of damage to plaintiffs' property. (Emphasis added.)
(Id. at pp. 4-7.)
Plaintiffs argue that each of these findings is against the manifest weight of the evidence. John Courtney, formerly the City of Brecksville Engineer, testified that the original grade was unstable. He was an independent witness called by plaintiffs but not retained by either party. Plaintiffs contend that this conclusion should have been discounted. They theorize that he concluded the soils were unstable only to avoid liability for failing to notify them of potential erosion. Specifically, they argue, he should have noted this condition on the map of their sublot before they purchased the plot. The trial court was not required, however, to adopt this sinister theory, particularly because plaintiffs never sued Courtney and abandoned their claims against the City of Brecksville on this theory. Moreover, it ignores the fact that plaintiffs' own expert as well as defendants' expert provided similar testimony.
Plaintiffs complain that the trial court referred to defendants' movement of the soil as a "minimal" contact with their property. Plaintiffs argue this characterization ignores the quantity of soil moved onto their property and onto adjacent properties sharing the same slope. The parties dispute how much soil was involved, but the maximum amount placed on sublot #142 and adjacent properties was as large as the basement of a house. The adjective the trial court used to describe the quantity of soil and force it exerted was relative. Although it may have been "large" by some standards, it was not clearly wrong to describe these quantities as "minimal" compared to the size of the slope.
Plaintiffs also challenge the trial court's findings concerning the original installation of the sanitary sewer and the conclusion that it increased the risk of slope failure. They contend that no eyewitness to the 1988 sewer installation testified that it required digging an enormous volume of earth at the base of the slope (a trench as large as twenty-feet deep, twenty-feet wide and six hundred fifty feet long) and that the pipe was thereafter buried with loosely compacted organic material. However, witnesses who oversaw and repaired the break in the sanitary sewer line in 1994 did testify concerning the location and earth surrounding the sewer pipe. Moreover, the record contained the original plans for installing the sewer, and there was testimony concerning how such sewer pipes are typically installed.
Finally, plaintiffs also complain that the trial court disregarded their claim that defendants' movement of the soil subsequently caused the sewer failure. Although plaintiffs' expert testified the slope had a safety factor of 1.1, indicating a "marginally stable" configuration, after the installation and before the collapse, the trial court was not required to accept this testimony. Defendants' expert did not calculate a numerical factor because he did not conduct destructive soil boring on the slope. Nevertheless, he disputed the conclusions of plaintiffs' expert. He stated that such calculations of competing forces are not precise, the estimates should be understood as a range, they did not exceed 1.3, and, therefore, the slope would not qualify as "stable."
The Ohio Supreme Court has summarized the principles governing the evaluation of expert opinion testimony:
 * * * [I]n the last analysis, the jury or a court, if a jury is waived, is the sole weigher of credibility and testimony. The jury can accept all, a part or none of the testimony offered by a witness whether it is an expert opinion or eyewitness fact, whether it is merely evidential or tends to prove the ultimate fact. In other words, '[t]he jury is the sole judgment of the weight of the evidence and the credibility of the witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest. [In so doing it] * * * should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the * * * [plaintiff] or the defendant, and his interest, if any in the outcome.'
McKay Mach. Co. v. Rodman (1967), 11 Ohio St.2d 77, 82, quotingState v. Antill (1964), 176 Ohio St. 61, 67. Although we have independently reviewed the evidence, as we are required to do when evaluating the manifest weight of the evidence, we decline to substitute our judgment for that of the trial judge who had a superior opportunity to observe the witnesses when determining the credibility and weight to be given to their conflicting testimony.
While there is much to be said in support of the testimony of plaintiffs' expert, we are not convinced that the trial court committed a manifest miscarriage of justice by not ruling in their favor because of his testimony. Defendants' expert provided contrary testimony sufficiently supported by substantial, competent, and credible evidence to support the trial court's judgment. The trial court chose to credit the defense expert's testimony over plaintiffs'. He was licensed by the state and had approximately forty years of experience. In fact, at the outset of his testimony, plaintiffs' counsel stipulated to, and stated he was "very satisfied" with, the defense expert's expertise. Even if we were inclined to disregard the testimony of defendants' expert and credit that of plaintiffs' expert as they now request, however, the trial court was still not required to find that plaintiffs satisfied their burden of proving their claims by a preponderance of the evidence.
Plaintiffs have likewise failed to show that the trial court's judgment rejecting their claim for punitive damages was against the manifest weight of the evidence. After discussing its finding against plaintiffs on the issue of liability for compensatory damages quoted above, the trial court's judgment entry added,
 Separately, based upon the foregoing, the Court finds and concludes that the plaintiffs have failed to establish by clear and convincing evidence that the conduct of defendants, Crestmont Construction, Inc. and Terry R. Wilson, constitutes willful or wanton misconduct entitling them to recovery of punitive damages and/or attorney fees.
(Id. at p. 7.)
It is well established that punitive damages may not be awarded when a party fails to prove underlying compensatory damages as a matter of law. E.g., Malone v. Courtyard byMarriott L.P. (1996), 74 Ohio St.3d 440, 447; Richard v. Hunter
(1949), 151 Ohio St. 185. Even if plaintiffs had proven their entitlement to compensatory damages, however, the trial court was not required to find actual malice sufficient to award them punitive damages under the circumstances of this case.
The trial court indicated that although the incident was "by strict definition, a trespass," defendants removed the soil deposited on plaintiffs' property when defendants feathered it into the adjacent property. They subsequently paid plaintiffs $1,000 to compensate them. While plaintiffs argued that defendants laughed and plowed up their property stakes when they objected to the movement of soil, the trial court could properly find that there was not clear and convincing evidence of actual malice to warrant punitive damages.
Accordingly, plaintiffs' second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, A.J., and ANN DYKE, J., CONCUR.
 _______________________________ DIANE KARPINSKI JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 27. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Claims involving other parties are not a subject of this appeal.
[2] Although the point is disputed by the parties, there is also evidence that another construction firm may have dumped earth in this area.