DECISION AND JOURNAL ENTRY
Michael Koczan appeals from the decisions of the Lorain County Court of Common Pleas, which granted judgment in favor of various defendants whom Koczan sued for negligence. This court affirms.
 I.
On December 8, 1995, at approximately 3:30 p.m., Michael Koczan was riding in a car driven by Brenda Longenecker. Longenecker was driving east on State Route 250, approaching the intersection of State Route 42. Although Longenecker was required to stop at a stop sign at the intersection, she drove through the stop sign at approximately fifty miles per hour and pulled into the path of a southbound tractor-trailer driven by defendant David Graham. Graham braked and steered to the left to avoid Longenecker, who was approaching from the right. However, Graham was unable to stop his truck in time to avoid a collision, and he struck Longenecker's car. Longenecker died at the scene, as did a passenger, Bobby Davis. Koczan was riding in the right rear seat and was ejected from the car upon impact. He landed in a ditch some distance from the crash site and was severely injured, remaining comatose for six weeks following the accident.
On December 10, 1996, Koczan filed a complaint against Longenecker's estate, Graham, Graham's employer Dworkin Inc., Paccar Corp. which allegedly leased the truck to Dworkin, Cleveland Stevedore Co. ("Stevedore") which loaded steel coils onto the truck prior to the accident, and several other defendants, not parties to this appeal. Other injured parties had filed suit, and the cases were consolidated.
On February 4, 1998, Koczan filed an amended complaint naming as a defendant Hissong-Kenworth Corp. ("Hissong"), a Paccar franchisee that leased the truck to Dworkin. In its answer, Hissong raised the affirmative defense that the statute of limitations had expired. Hissong moved for judgment and the trial court granted the motion, finding that the complaint was filed beyond the time of the statute of limitations. Paccar and Stevedore separately moved for summary judgment, which the court granted in their favor. Koczan voluntarily dismissed several defendants.
A jury trial was held on the claims of the remaining plaintiffs, Koczan and of the Estate of Bobby Davis, against the remaining defendants, Graham and Dworkin. On September 25, 1998, the jury rendered a verdict in favor of the defendants. The jury also answered "No" to a single interrogatory asking whether the defendants were negligent.
After the trial court entered judgment in favor of Graham and Dworkin, all of the claims and parties had been addressed, and Koczan filed the instant appeal. He assigns six errors, which we have rearranged for ease of discussion.
 II. FIFTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTIONS FOR DIRECTED VERDICTS AND J.N.O.V. AS TO NEGLIGENCE PER S.E. FOR DEFENDANTS' ADMITTED VIOLATION OF O.R.C. § 4511.25(A), 4511.33(A) AND (D), 4511.35, 4513.20(I) AND 5577.02 AND 5577.04.
Koczan argues that the evidence before the jury established (1) that Graham failed to maintain his lane of travel in violation of R.C. 4511.25(A) and 4511.33(A), (2) that the truck was overloaded, in violation of R.C. 5577.02 and 5577.04, and (3) that one of the truck's brakes was out of adjustment, in violation of R.C. 4513.20(I). At the close of the defense case, Koczan moved for a directed verdict on the issue of negligence, claiming that the violations constituted negligence per se. After trial, Koczan moved for judgment notwithstanding the verdict (J.N.O.V.) on this basis. The court denied both motions.
Civ.R. 50(A) permits a party to make a motion for a directed verdict at the close of the moving party's evidence or at the close of all the evidence. The trial court may properly grant a motion for a directed verdict if, construing the evidence in the light most favorable to the non-moving party, reasonable minds could reach only one conclusion as to a determinative issue, that in favor of the moving party. Civ.R. 50(B) permits a party to make a motion for judgment notwithstanding the verdict at any time within fourteen days after the entry of judgment, and such a motion may be joined with a motion for a new trial.
An appellate court reviews a trial court's ruling on directed verdict or J.N.O.V. de novo. Campbell v. Colley (1996), 113 Ohio App.3d 14,18, citing Howell v. Dayton Power Light Co. (1995),102 Ohio App.3d 6, 13, and Keeton v. Telemedia Co. of S. Ohio
(1994), 98 Ohio App.3d 405, 409. Thus, this court will affirm the decision of the trial court if reasonable minds could have differed in rendering a decision on the issue of negligence.
 Maintaining the Marked Lane
Koczan argues that the evidence established at trial was that Graham failed to maintain his lane of traffic, when he swerved his truck to the left of the left lane marker after Longenecker pulled into his lane of traffic. R.C. 4511.25(A) provides that a vehicle "shall be driven upon the right half of the roadway, except as follows: * * * When an obstruction exists making it necessary to drive to the left of center of the highway." R.C. 4511.33
likewise provides that a driver must drive within a single lane of traffic "as nearly as is practicable" and prohibits changing lanes if an official traffic control device so directs the driver. Koczan asserts that Graham should have either maintained his lane or veered to the right. Koczan also maintains that Graham cannot claim a defense of sudden emergency because his response was too slow when it was clear that Longenecker's car would not stop.
The evidence before the jury established that Graham saw Longenecker approach from the right, and he initially assumed that she would stop at the sign. However, when it became clear that Longenecker was not going to stop at the stop sign, Graham attempted to avoid the collision by pulling his truck to the left of his lane, crossing a double yellow lane line, which signals that no passing is allowed. Graham asserted the defense of sudden emergency. Eyewitness testimony established that when Longenecker and Graham were approximately one hundred to one hundred and fifty feet from the intersection, it became apparent that Longenecker was traveling too fast to actually stop at the sign. Based on that testimony, experts for both sides testified that Graham had approximately two seconds in which to determine that Longenecker was not going to stop, and then to take evasive action. Graham admitted that he swerved the truck to the left and crossed the left lane line, contrary to the general rule of R.C. 4511.25(A) and 4511.33. However, Graham stated that he swerved left to allow Longenecker to slow or stop and avoid a collision.
Experts differed about whether, if Graham had driven straight, the truck would have missed the car, as it sped across his lane. Assuming that the accident would have been averted if Graham had maintained his lane, Graham would have to know, prior to deciding whether to drive straight or to swerve left, that Longenecker would continue driving at fifty miles an hour, as she apparently did. It is equally likely that Longenecker could have realized the truck was approaching, and decided to brake or to turn to her right. Either of these options would have resulted in Longenecker remaining in Graham's lane of travel, in which case a better evasive move would have been for Graham to swerve left. Graham also testified that, although he was trained to veer right if possible to avoid a collision, if he had gone right his truck would have rolled over in the dip at the side of the road, perhaps killing someone.
As to Graham's alleged delayed reaction, Graham testified that when he realized the car would probably not stop, he looked in the rear mirrors on each side of his truck. The driver of a car traveling behind Graham testified that she was driving approximately three to four car lengths behind Graham. In deciding which evasive action was most appropriate, Graham needed to determine whether there were cars behind him or about to pass him.
Viewing the facts in the light most favorable to Graham, as we must, reasonable minds could determine that Graham exercised appropriate evasive movement in response to a sudden emergency, that he reasonably perceived that the best chance to avoid the accident was to cross into the left lane, and that therefore Graham did not violate the statutory provisions for maintaining his lane of traffic. Thus, the trial court appropriately denied a directed verdict or J.N.O.V. on this issue.
 B. Defective Brakes
The Dworkin truck had ten brakes, one of which had a push rod that had "two inches of travel" meaning that the rod has to travel two inches before it reaches the brake pad and engages the brake. The brake on the other end of this axle had a push rod at one and three-quarter inches. Koczan cites to R.C. 4513.20(I), which requires that both brakes on an axle "be so adjusted as to operate as equally as practicable." Koczan argues that the discrepancy in the travel for the push rods on these two brakes constitutes negligence per se. However, the experts who testified differed as to whether a brake with two inches of travel and a brake with one and three-quarter inches of travel had any measurable difference in their braking performance. The statute does not require that the adjustment be exactly equal, only that the brakes operate as equally as practicable.
Koczan also argues to this court that a directed verdict was appropriate because the two-inch brake rod violated federal regulations, and such a violation constituted negligence per se. After the accident, an inspector from the Public Utilities Commission of Ohio ("PUCO"), which is responsible for regulating trucking in Ohio, completed a citation form. In the area marked "violations," for the brakes, the form was marked, "Out of Service: No. One brake at readjustment limit." The PUCO inspector testified that the brake was at the federal readjustment limit. The inspector explained that if a trucker was stopped with twenty percent of his brakes at more than the two-inch level, the truck would not be allowed to continue the trip. Koczan's counsel asked the inspector whether a truck with a brake at the two-inch limit would be prohibited from being re-dispatched without a brake adjustment. The inspector testified that there was no regulation stating that the truck could not be re-dispatched. The inspector also testified that the current PUCO forms have a "comments" section, in which a non-violation situation, such as that here, would be noted. Although there was some dispute about whether the brake at a two-inch setting was more or less efficient than a brake at a lower setting, the evidence clearly established that there was no violation of the regulation. So, although the defendants admitted that the brake was at a readjustment level, this is not, as Koczan states, an admission that the brake was defective, in violation of either the statute or the federal regulation.
Reasonable minds could conclude that the brake in issue complied with federal regulations, was safe, and that the two opposing brakes operated as equally as practicable. Thus, reasonable minds could conclude that Graham and Dworkin were not negligent in operating the truck with the brake at this operational level. The trial court appropriately denied Koczan's motion for a directed verdict or J.N.O.V. on this issue.
 C. Improper Load
Koczan argues that the defendants admitted that the truck was carrying a load in excess of that permitted by R.C. 5577.02 and 5577.04. The latter statute prohibits a greater load than twenty thousand pounds per axle. The load of steel weighed 62,832 pounds, and the truck had five axles, three of which were under the trailer itself. R.C. 5577.02 prohibits the operation of a truck with a total weight in excess of those prescribed in R.C.5577.01 to 5577.14, "except upon special permission, granted as provided by [R.C.] 4513.34." The maximum weight permitted without a special permit is 80,000 pounds. The manufacturer of the trailer certified that it was capable of carrying 111,000 pounds. Graham admitted that the full weight of his truck and load was 88,832 pounds, exceeding the 80,000-pound weight limit for a truck, established by R.C. 5577.02, commonly known as the "Bridge Law." The defendants stipulated that for a total weight exceeding 80,000 pounds, Dworkin was obliged to secure a permit. Such a permit would allow Graham to drive the truck along certain routes only. There was no evidence that Graham would have been prevented from traveling this particular route with a permit.
Several experts testified that the weight limit was imposed for purposes of maintaining roads and bridges, and for safety purposes of preventing bridge collapse where an overweight truck would overtax the structural integrity of a bridge. Koczan sought to establish that the weight limit was designed as a general safety issue. In direct examination of his own expert witness, Koczan's counsel observed that the Ohio Department of Transportation Form issued with a special overweight vehicle permit prohibits the issue of overweight permits for certain stated holidays. Counsel then suggested that permits are not issued for travel on these holidays because overweight trucks pose a safety hazard which is heightened with increased holiday traffic.[1] When Koczan's counsel proposed this explanation to his expert witness, the witness replied that the holiday exclusion was designed to prevent overload on a bridge that might result from a heavy volume of stopped traffic in addition to the overloaded truck. The testimony on both sides established that the overloading of Graham's truck, although violative of R.C.5577.02, did not violate a law designed to avoid the type of accident involved here. Furthermore, there was clear and convincing evidence that Graham's trailer was capable of carrying a load of 111,000 pounds, far more than the 62,832 pound load which Graham carried.
The Ohio Supreme Court has written of the application of negligence per se to the violation of a statute:
 [n]egligence per se is a legal doctrine that presumes negligence where a statute that provides a standard of care to protect a class of persons from a particular risk is violated. But the presumption arises only when the violation results in the type of injury that the statute was designed to protect against.
Crawford v. Ohio Div. of Parole Community Serv. (1991),57 Ohio St.3d 184, 191. Testimony on both sides established that the harm to be avoided by R.C. 5577.02 and 5577.04 was not the harm involved in this particular case. Consequently, violation of the statute does not constitute negligence perse.
Reasonable minds could determine that, notwithstanding Graham's and Dworkin's failure to obtain an overload permit, Graham's operation of the truck in violation of the statute was not negligence per se. Therefore, the trial court appropriately denied his directed verdict and J.N.O.V. on the issue of negligence per se where the harm arguably caused by the violation is not that which the law was designed to avoid.
Koczan's fifth assignment of error is overruled.
 III. SIXTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL.
Koczan claims the trial court committed prejudicial error, which warranted a new trial. Koczan also claims that the jury's verdict was contrary to law and against the manifest weight of the evidence. Because we have concluded that the verdict was not contrary to law, we address only the claimed errors and the manifest weight issue.
The trial court possesses broad discretion whether to grant or deny a new trial. Poske v. Mergl (1959), 169 Ohio St. 70, paragraph one and two of the syllabus. When an appellate court reviews a trial court's denial of a new trial based on a manifest weight argument, "a reviewing court can reverse such an order for a new trial only upon a finding of an abuse of discretion."Malone v. Courtyard by Marriott L. P. (1996), 74 Ohio St.3d 440,448, citing Rohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph one of the syllabus. Likewise, where the alleged error by the trial court involves an issue within the discretion of the trial court, such as the evidentiary rulings at issue here, the appellate court reviews the denial of a new trial using an abuse of discretion standard. Rhode, 23 Ohio St.2d at paragraph one of syllabus. An abuse of discretion is found only where the trial court's decision is unreasonable, arbitrary or unconscionable.Malone, 74 Ohio St.3d at 448, quoting Poske v. Mergl,169 Ohio St. at 75. In applying the abuse of discretion standard, the reviewing court must "view the evidence favorably to the trial court's action rather than to the original jury's verdict."Malone, 74 Ohio St.3d at 448, quoting Rohde, 23 Ohio St.2d at 94.
The alleged prejudicial errors include: allowing improper opinion testimony by a non-expert; excluding reference to violations of the Code of Federal Regulations; excluding a proffered instructional videotape for truck driver training; excluding an expert's videotaped recreation of the accident; and permitting defense counsel to make derogatory remarks about plaintiff's counsel.
 A. Evidentiary Rulings
It is well established that a "trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, [an appellate] court should be slow to interfere." (First alteration in original.) State v. Maurer
(1984), 15 Ohio St.3d 239, 265, certiorari denied (1985),472 U.S. 1012, 86 L.Ed.2d 728, quoting State v. Hymore (1967),9 Ohio St.2d 122, 128, certiorari denied (1968), 390 U.S. 1024,20 L.Ed.2d 281.
 1. Eyewitness Testimony
Koczan argues that the trial court erred in overruling his objection to opinion testimony by an eyewitness who said that Graham did as well as he could under the circumstances in attempting to avoid the accident. Koczan called as a witness an off-duty state trooper, who was driving north on Route 42 just south of the intersection with Route 250. The trooper witnessed the accident. He testified that Graham did just what the trooper would have done under the circumstances. Koczan claims that the trooper's testimony was essentially the only support for Graham's defense of sudden emergency.
Koczan asserts that the court erred in allowing this non-expert render an opinion and then by denying Koczan the opportunity to impeach the witness. Evid.R. 701 limits opinion testimony by a lay person to "those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." The trooper's opinion testimony falls squarely within this rule. Furthermore, the court instructed the jury that the trooper was not an expert. As to the court's denial of an opportunity to impeach the witness, Koczan did not offer, and does not offer, any good-faith basis on which he intended to impeach the witness. See Evid.R. 607(B) and 616.
 2. Excluded Evidence
Koczan challenges the exclusion of reference to the Code of Federal Regulations dealing with proper maintenance of a truck. The court instructed the jury as to the law regarding negligenceper se. The court also instructed the jury about the substantive provisions of the Ohio Revised Code. Dworkin admitted that the vehicle was overloaded and Koczan was permitted to argue that the condition constituted a violation of R.C. 5577.02 and 5577.04. The PUCO investigator testified that the brake with the two inch push rod was not in violation of the federal regulations. The submission to the jury of another regulation governing these conditions would add nothing to the fact-finding process, and would be duplicative. Evid.R. 403(B). Furthermore, Koczan does not specify how he was prejudiced by the exclusion.
The trial court also excluded a truck driver training video compiled by Koczan's expert. Once again, the issue of Graham's handling of the truck under the instant circumstances was covered by competent testimony. A general video designed to train truck drivers on a whole range of issues having little or nothing to do with this case is duplicative. Evid.R. 403(B). The trial court did not abuse its discretion in excluding it.
 B. Defense Counsel's Statements
Koczan also argues that the trial court erred in not striking defense counsel's allegedly improper remarks made during opening and closing arguments. Koczan admits that he did not object to the allegedly improper remarks but says that even without objection, the trial court is obliged to strike such comments. However, where a party fails to bring to the attention of the trial court an error at the time when the error could be corrected, the party is deemed to have waived the right to challenge the error on appeal. State v. Childs (1968), 14 Ohio St.2d 56
. Although the Ohio Supreme Court has recognized the exception of plain error in civil cases, Reichert v. Ingersoll
(1985), 18 Ohio St.3d 220, 223, it is applied only under exceptional circumstances to prevent a manifest miscarriage of justice. Id., citing State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. This is not such a case.
 C. Manifest Weight of the Evidence
Finally, Koczan argues that defendants admitted to violations of various statutes, constituting negligence, and that the jury verdict, which included a finding that defendants were not negligent, was therefore against the manifest weight of the evidence. This argument is without merit. We have already determined that the evidence was not sufficient to justify a directed verdict of negligence per se on the alleged statutory and regulatory violations relating to the brake, the overloading of the truck, and Graham's failure to maintain his lane of travel. We now review the evidence to see if the verdict was supported by the weight of the evidence.
 1. The Brake
A single brake, of the ten on Graham's truck, had a push rod with a travel distance of two inches. The testimony of the PUCO inspector established that there was no violation of the federal regulations. Although there was some dispute about whether the brake at a two-inch setting was more or less efficient than a brake at a lower setting, it is clear that there was no violation of the federal regulations. Furthermore, although the defendants admitted that the brake was at the readjustment level, this is not, as Koczan states, an admission of a violation of the statute.
Finally, there was abundant evidence both from eyewitnesses and from expert witnesses that Graham could not have avoided the accident. The expert witnesses differed in their opinions about whether the one brake was operating at less than optimal braking performance. However, there was abundant evidence to allow reasonable minds to conclude that the brake was within the safety guidelines and the condition of the brake did not proximately cause this accident.
 2. The Improper Load
Koczan argues that the defendants admitted that the truck was overloaded with steel and the steel was improperly secured, constituting a violation of R.C. 5577.02 and 5577.04, constituting negligence per se. We have already rejected this argument. Koczan also argues that Graham negligently secured the steel because he used too few chains to secure the coils. The PUCO investigator's testimony established that one steel coil moved two inches to the right, upon impact. The investigator said that in his experience such shifting always results from the impact itself. There was no harm to the chains or the wooden frames that also secured the coils. There was no competent testimony that the slight shifting of the coils in any way contributed to the accident or resulted in greater harm to Koczan.
There was abundant evidence to establish that neither the overloading nor the securing of the steel constituted negligence or that, if negligent, proximately caused this accident.
 3. Maintaining Marked Lanes
The testimony of Graham, the trooper, and the defense's expert witness established that Graham was faced with a sudden emergency, which he reasonably expected he could best avoid by veering into the left lane. Graham testified that he believed that if he veered the truck to the right, he would roll his truck, perhaps causing the coils to come off, with a great likelihood that someone would be killed. There was testimony that a car was traveling three to four car lengths behind Graham, and that there was a dip in the field to the right of the roadway, which may have been an unstable place for Graham to move his truck. Thus, there was evidence before the jury to permit reasonable minds to conclude that Graham was faced with a sudden emergency and took appropriate evasive action under the circumstances.
This court cannot conclude that the trial court abused its discretion in denying Koczan a new trial on the weight of the evidence. Koczan's sixth assignment of error is overruled.
 IV.
THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING PACCAR'S SUMMARY JUDGMENT MOTION BASED UPON ITS CLAIM OF NO DUTY TO THE MOTORING PUBLIC OF WHICH PLAINTIFF WAS A MEMBER AND STRIKING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT.
Koczan's complaint alleged that Paccar leased the truck to Dworkin and had a non-delegable duty of care to maintain the truck, pursuant to the lease agreement. Koczan alleged that the brakes on the truck were defectively maintained and that Paccar therefore was negligent.
To prevail on a summary judgment motion, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis sic.) Dresher v. Burt (1996),75 Ohio St.3d 280, 292. To accomplish this, the movant must be able to point out to the trial court "evidentiary materials [that] show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Id.
at 293. If such evidence is produced, the non-moving party must proffer evidence that some issue of material fact remains for the trial court to resolve. Id.
An appellate court reviews an award of summary judgment denovo and, like the trial court, must view the facts in the case in the light most favorable to the non-moving party. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. Any doubt must be resolved in favor of the non-moving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12. If the moving party meets this burden of proof, the burden then shifts to the non-moving party to show that there is a genuine issue of material fact as to that element. Dresher, 75 Ohio St.3d at 293.
In its motion for summary judgment, Paccar presented evidence that its franchise agreement with Hissong permitted Hissong to use Paccar's corporate name, but left full control of daily operations to the franchisee. Paccar also raised the issue of improper process and improper service of process in its motion for summary judgment. In granting summary judgment, the trial court pointed to Civ.R. 56(F) evidence that Paccar owed no duty of care.
Koczan argued that Paccar waived the issue of service of process, because it filed responses prior to the filing of the amended complaint, through counsel designated as representing Paccar, Hissong, Dworkin and Graham. We note that Paccar raised the issue of insufficiency of process and service of process in its responsive pleading to Koczan's amended complaint. See Civ.R. 12(H). In its motion for summary judgment, Paccar pointed to its franchise agreement to establish that Hissong was not an agent for purposes of service of process. Paccar's franchise agreement provided that Hissong was not an agent of Paccar, and "is not granted, by the terms of this Agreement or otherwise, any express or implied right or authority to assume or create any obligation or responsibility on behalf of, or in the name of, PACCAR Leasing in any matter." However, Civ.R. 4.2(F) permits service upon a corporation "at any of its usual places of business." This court cannot conclude that the service of process on Paccar at Hissong's place of business, where Hissong clearly operated as a Paccar franchisee, was insufficient service of process.
With reference to the issue of its duty of care, Paccar presented evidence establishing that its franchise agreement with Hissong assigned to Hissong the duty to maintain the trucks which Hissong leased to its end customers. The franchise agreement provided that Paccar would provide certain training to Hissong's personnel regarding the proper maintenance of the vehicles. However, the franchise agreement assigned to Hissong the duty to "[e]mploy such number of competent, trained personnel, knowledgeable in the heavy-duty truck leasing business, * * * as may be necessary to service the needs of potential customers." Hissong was also obliged to maintain all vehicles and to indemnify Paccar for all liability "resulting from * * * the general operation of Franchisee's business." Hissong was responsible for "compliance with all laws, statutes, ordinances, or code of any public or governmental authority pertaining to Franchisee and its truck leasing business." The agreement further stated that "Franchisee is an independent contractor and is not the agent of PACCAR Leasing for any purpose whatsoever."
In turn, Hissong had a Vehicle Lease Service Agreement with Dworkin that assigned to Hissong d/b/a PacLease the duty to "maintain the leased Vehicle in good repair and furnish all labor and parts which may be required." From this evidence which was before the court, Paccar argued that it was entitled to summary judgment because, even if the brakes were defectively maintained, Hissong assumed that duty through its franchise agreement with Paccar.
The existence of a duty in a negligence action is generally a question of law for the court to determine. Mussivand v. David
(1989), 45 Ohio St.3d 314, 318. A duty of care may be assigned by contract. See, e.g., Fischer v. Dairy Mart Convenience Store,Inc. (1991), 77 Ohio App.3d 543, 552; Taylor v. Ohio Edison Co.
(Aug. 21, 1998), Lake App. No. 97-L-036, unreported.
Koczan claims that Hissong was an agent of Paccar. "The relationship of principal and agent or master and servant exists only when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks." Hanson v.Kynast (1986), 24 Ohio St.3d 171, paragraph one of the syllabus. Agency relationships are generally created by contract. See, generally, Puente v. Garcia (Dec. 12, 1986), Lucas App. No. L-86-134, unreported. Agency may also exist where the principal intentionally or negligently held out the agent to the public as possessing authority to act on the principal's behalf. Id. A person asserting such "apparent agency" has the burden of proving the existence of the agency relationship. Id.
Paccar clearly met its burden under Dresher to point to evidence that established that Hissong was an independent contractor over whom Paccar exercised no day to day control, and that there was no genuine issue of material fact that Paccar owed no duty of care to maintain the Dworkin truck.
The burden shifted to the nonmovant Koczan to show that there was a genuine issue of material fact about the alleged agency relationship. Koczan pointed to no evidence to establish that Hissong was an agent of Paccar, and was acting on behalf of Paccar rather than on its own behalf. Koczan argued that the Paccar/Hissong franchise agreement contained "self-serving disclaimers" to protect Paccar from liability. However, Koczan offered no evidence to support his contention that the agreement was other than a valid franchise agreement in which Hissong agreed to accept responsibility for the day to day servicing of the trucks in its care.
Viewing most favorably to Koczan the facts in existence when summary judgment was granted, the brake in issue was defectively maintained and the duty to maintain the brakes, as established by both the contract between Hissong and Dworkin and the franchise contract, fell to Hissong. There was no genuine issue of material fact as to Paccar's alleged duty of care to service the truck. Paccar was entitled to judgment as a matter of law.
Koczan's third assignment of error is overruled, and we affirm trial court's grant of summary judgment to Paccar.
 V. FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING STEVEDORE'S SUMMARY JUDGMENT MOTION BASED UPON ITS CLAIM OF NO DUTY OWED TO THE MOTORING PUBLIC OF WHICH PLAINTIFF WAS A MEMBER.
Koczan's complaint alleged that Cleveland Stevedore overloaded Graham's truck with the steel coils, in violation of state and federal regulations, and in a manner that was reckless, willful, and wanton. Koczan claimed that the overloading of the truck proximately caused the injuries to Koczan.
The trial court granted summary judgment to Stevedore. In its journal entry, the trial court referenced the affidavit of Dworkin's owner Robert Jacobs, offered in support of Stevedore's motion for summary judgment. Jacobs averred that Stevedore had no contract with Dworkin regarding the loading of the steel. Rather, it was Dworkin's understanding that Stevedore was obliged to load steel for Thyssen Steel onto trucks selected by Thyssen for transport to another destination. Jacobs admitted that Dworkin was responsible for: determining how many trucks it would use to transport the Thyssen steel; obtaining an overweight permit; and securing the load of steel on each truck. Stevedore also pointed to the deposition testimony of Graham and two of Stevedore's employees which supported Jacobs' statements.
Stevedore also pointed out that pursuant to R.C. 5577.02, the duty of securing the loads and carrying loads within the legal limits belong to the operator of the vehicle, not with the stevedore. Thus, although Stevedore stipulated that the truck was overloaded, and even assuming that the load was improperly secured, the duty of care in this regard belonged to Dworkin, not Stevedore.
In response to the motion for summary judgment, Koczan attached affidavits of persons who had reviewed much of the documentation relating to the accident and deposition transcripts of various individuals. These affidavits do not "show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E). The statements contained in these affidavits are conclusory, and in one case, admittedly represent a "preliminary conclusion."
Viewing most favorably to Koczan the facts in existence at the time summary judgment was granted, the truck was overloaded and improperly secured, a condition that proximately caused the injuries Koczan suffered. Even so, Dworkin acknowledged that Stevedore's only involvement was to place the steel coils onto trucks as directed by Dworkin. There was no genuine issue of material fact concerning Stevedore's alleged duty of care and Stevedore was entitled to judgment as a matter of law.
The trial court's grant of summary judgment in favor of Stevedore was proper. Koczan's fourth assignment of error is overruled.
 VI. FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING HISSONG'S CIV.R. 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION TO VACATE ITS GRANT OF JUDGMENT ON THE PLEADINGS AND TO AMEND PARAGRAPH 13 BY INTERLINEATION.
Koczan's first two assignments of error address the trial court's grant of Hissong's Civ.R. 12(B) motion for judgment on the pleadings. Hissong argued to the trial court that Koczan's claims were barred by the two-year statute of limitations imposed by R.C. 2305.10, because the amended complaint was not filed by December 8, 1997. Hissong further argued that Koczan did not meet the provisions of Civ.R. 15(C), governing the relation back of an amended complaint to the time of the filing of the original complaint. See, e.g.Kimble v. Pepsi-Cola Gen. Bottle (1995), 103 Ohio App.3d 205,207.
This court reviews a dismissal pursuant to Civ.R. 12(B) denovo. See Oliver v. Wagner (Dec. 8, 1999), Medina App. No. 2832-M, unreported, at 6-7, citing Hunt v. Marksman Prods., Div.of S/R Industries, Inc. (1995), 101 Ohio App.3d 760, 762. This court must accept as true the factual allegations contained in the complaint, and we make all reasonable inferences in favor of the non-moving party. Doe v. First United Methodist Church (1994),68 Ohio St.3d 531, 535. This court will affirm the dismissal if it appears beyond a doubt from the face of the complaint that the plaintiff can prove no set of facts entitling him to relief.O'Brien v. Univ. Community Tenants Union, Inc. (1975), 42 Ohio St.2d 242, syllabus.
Construing the factual allegations of the complaint as true, Koczan was "confined in hospitals and a nursing home in excess of six months during which he was of unsound mind." During those six months, the statute of limitations was tolled. See R.C. 2305.16. Hissong asserts that Koczan was sufficiently capable of working with his counsel to file a complaint against various other defendants within two years of the accident. Such an assertion has no relevance here because it deals with matters beyond the face of the pleadings, and may only be raised in a motion for summary judgment. See Civ.R. 12(B).
The Ohio Supreme Court has held that when a plaintiff claims that he was of unsound mind, such as to toll the statute of limitations, he must present "evidence substantiating he or she was of unsound mind and the disease or condition (1) was determined by a psychiatrist or licensed physician who treated the claimant during his confinement to have rendered him of unsound mind, or (2) is generally accepted by the medical community as one causing unsound mind." Fisher v. Ohio University (1992), 63 Ohio St.3d 484,487, citing the former version of R.C. 2305.16. However, Fisher dealt with the grant of summary judgment to a defendant on the issue of the disability. There is nothing in the statute that requires such substantiating evidence of the disability to be filed with the pleading. Consequently, Hissong's challenge to the issue of disability was not a proper subject for a Civ.R. 12(B) motion, but rather should have been raised in a motion for summary judgment.
Because the court entered judgment on the pleadings, we must accept as true Koczan's statement in the amended complaint that he was under a disability for six months. First United MethodistChurch, 68 Ohio St.3d at 535. Thus the statute of limitations did not expire until June 7, 1998, long after Koczan filed the amended complaint on February 8, 1998. The trial court erred in granting Hissong's motion for judgment on the pleadings.
Hissong asserts that even if the trial court erred in granting the dismissal, Koczan's claim against Hissong is barred by collateral estoppel, based on the jury's conclusion that Graham and Dworkin were not negligent. This court agrees.
A party asserting collateral estoppel must show that "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party [or] in privity with a party to the prior action." Thompson v. Wing (1994), 70 Ohio St.3d 176,183, citing Whitehead v. Gen. Tel. Co. (1969), 20 Ohio St.2d 108, paragraph two of the syllabus.
To prevail at trial Koczan was required to prove that the defendants owed him a duty of care, they breached that duty, and the breach of the duty was the proximate cause of his injury. SeeChambers v. St. Mary's School (1998), 82 Ohio St.3d 563, 565. The jury was properly instructed that the trial defendants owed a duty of care to maintain the brakes in a safe condition. There was no evidence before the jury that anyone other than Graham and Dworkin owed such a duty of care in this case. The jury was also instructed that a violation of the duty of care constitutes negligence. Collateral estoppel properly applies to this case only if, in rendering its verdict, the jury determined that the brakes were not defective or that the defective brakes did not proximately cause Koczan's injuries. The jury determined that Graham and Dworkin were not negligent, which the jury could conclude only if it decided that there was no breach of the duty of care. In other words, when the jury determined that Graham and Dworkin were not negligent, it must have decided, inter alia, that the one brake in issue was not defective.
Although the trial court erred in granting judgment in favor of Hissong, we find that reversal on this issue is not warranted, because Koczan is collaterally estopped from prosecuting his case against Hissong, given the jury's determination that the brakes were not negligently maintained.
This court agrees with the Sixth District Court of Appeals, which held that the trial court's erroneous dismissal of a claim against one defendant was harmless error, where the appellate court affirmed a directed verdict in favor of another defendant on an identical products liability claim. Rybaczewski v. MercuryMotor (May 12, 1995), Lucas App. No. L-94-132, unreported. TheRybazewski court reasoned,
 This court has affirmed the trial court's grant of Ford's motion for a directed verdict. Because appellants asserted identical products liability claims against Ferro and Ford, if appellants lacked sufficient evidence against Ford, they would have lacked sufficient evidence against Ferro. Therefore, had the trial court not dismissed Ferro on statute of limitations grounds, Ferro too would have been entitled to a directed verdict. Thus, any error in the trial court's dismissal of Ferro on statute of limitations grounds was harmless error, Civ.R. 61. Leichtamer v. Am. Motors Corp. (1981), 67 Ohio St.2d 456, 474-75 (harmless error is one which does not affect a substantial right of the parties).
Id. Thus, we overrule Koczan's first and second assignments of error.
 VII.
Having overruled all of Koczan's assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
FOR THE COURT, BATCHELDER, P. J., CONCURS.
[1] In fact, only overdimensional vehicles are prohibited from travel on the holidays. The ODOT form reads: "Overweight vehicle/loads that are not overdimensional, traveling under the authority of a Special Hauling Permit, will not be restricted as to travel hours or days so long as the overweight vehicle/load can move without obstructing the normal flow of the traffic." The holiday restriction applies to vehicles which are not included in this description (i.e. are overdimensional). Such vehicles are not permitted to travel on certain named holidays. Defendants did not challenge Koczan's characterization of the ODOT form.