Malone et al., Appellees, *v.* Courtyard by Marriott
Limited Partnership et al., Appellants.

[Cite as *Malone v. Courtyard by Marriott
L.P.* (1996), 74 Ohio St.3d 440.]

(No. 94–1413—Submitted November 14, 1995—Decided February 7, 1996.)

*Lane, Alton & Horst, Gregory D. Rankin, Patrick H. Boggs* and *Robert B. Graziano,* for appellees.

*Squire, Sanders & Dempsey, David W. Alexander* and *Scott B. Pfahl,* for appellants.

WRIGHT, J. At its core, this case presents two questions for our consideration. First, was the trial court's grant of Marriott's motion for a directed verdict on the issue of punitive damages error? Second, was the judge's order for a new trial on Meador's negligence claim error? We answer these queries in the negative.

Judge Pfeiffer's directed verdict on the question of punitive damages should have been affirmed by the court of appeals. In determining whether to direct a verdict, the trial court does not engage in a weighing of the evidence, nor does it evaluate the credibility of witnesses. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 67–68, 23 O.O.3d 115, 116, 430 N.E.2d 935, 937. Rather, the court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury? *Id.* at 68–69, 23 O.O.3d at 116, 430 N.E.2d at 938. A motion for a directed verdict may be granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Civ.R. 50(A)(4).

The law of Ohio is clear on when punitive damages may be awarded:

"[P]unitive or exemplary damages are not recoverable from a defendant in question in a tort action unless *both* of the following apply:

"(1) The actions or omissions of that defendant demonstrate malice * * *, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate; [and]

"(2) The plaintiff in question has adduced proof of actual damages that resulted from actions or omissions as described in division (B)(1) of this section." (Emphasis added.) R.C. 2315.21(B).

Thus, as a threshold matter, Malone and Meador were obligated to present evidence of malice on the part of Marriott before their claim for punitive damages could proceed to the jury.

Our case law defines "malice" as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability

of causing substantial harm." (Emphasis *sic.*) *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. Because R.C. 2315.21 does not provide its own definition of "malice," this court has continued to apply *Preston*'s definition. *Cabe v. Lunich* (1994), 70 Ohio St.3d 598, 640 N.E.2d 159, paragraph one of the syllabus; *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, paragraph one of the syllabus.

The first type of malice articulated in *Preston* is not germane to this matter. Appellees argued, however, that sufficient evidence had been introduced at trial to create a question for the jury on the second definition of malice. Specifically, appellees' counsel pointed to the testimony of Eunela Williams, who stated that she contacted the front desk twice, roughly between 4:00 and 4:20 a.m., because she had heard an argument coming from Gatewood's room. Appellees contend that Marriott's failure to respond to Williams's complaints constituted a conscious disregard for the safety of Malone and Meador, and created a great probability of harm to them. As a matter of law, this portrayal of Marriott's response is inaccurate.

Marriott's alleged nonfeasance cannot be characterized as malice because the information provided to its employees was too ambiguous. In Williams's two telephone calls to the front desk, she complained only of someone "fighting and making a lot of noise," and she requested that the front desk "send someone up." Williams did not provide the front desk with information on the nature of the disturbance, and in her deposition testimony she characterized the noise from Gatewood's room as a domestic quarrel.

The apparent miscommunication between Williams and the front desk staff is significant because of this court's pronouncements on the "conscious disregard" theory of malice. As Chief Justice Moyer noted in *Preston,* an award of punitive damages based on conscious disregard malice requires "a positive element of conscious wrongdoing * * *. This element has been termed conscious, deliberate or intentional. It requires the party to possess knowledge of the harm that might be caused by his behavior." *Preston,* 32 Ohio St.3d at 335, 512 N.E.2d at 1176.

In other words, Marriott, through its agents, must have actually known of the threat to its guests. Absent such proof of a defendant's subjective knowledge of the danger posed to another, a punitive damages claim against that defendant premised on the "conscious disregard" theory of malice is not warranted. Since nothing in Williams's calls to the front desk provided Marriott personnel with information about the physical threat confronting appellees, a charge to the jury on punitive damages would have been unjustified. Accordingly, the trial court's decision to direct the verdict was appropriate.

It is significant to note that even if punitive damages were warranted in this case, Malone could not recover them because the jury did not award her compensatory damages. As we have held time and again, punitive damages may not be awarded when a jury fails to award compensatory damages. *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 27, 20 OBR 213, 214, 485 N.E.2d 704, 705.

The appellees attempt to circumvent this bar to Malone's recovery of punitive damages by pointing out that Malone failed to recover compensatory damages under the negligence theory only because the jury found that she had been fifty-one percent comparatively negligent. Since comparative negligence is not available as an affirmative defense for an action based on recklessness, appellees theorize that Malone could have recovered compensatory damages on a recklessness theory. Such an award would also allow Malone to overcome the bar to punitive damages that was articulated in *Bishop* and elsewhere.

Appellees then assert that the allegation of recklessness in count three of their complaint actually constituted a claim for both punitive *and* compensatory damages. The trial court's decision to direct a verdict on the third count of their complaint thus prevented the jury from addressing recklessness as a basis for compensatory damages as well as punitive damages. If the directed verdict on that issue were to be reversed, appellees contend that Malone could still attempt to recover compensatory and punitive damages.

Although the court of appeals found this argument persuasive, it is flawed in one vital respect: there is absolutely *no* indication in the pleadings, including the complaint amended after the close of evidence, that appellees ever pursued a compensatory damages claim based on recklessness. In the first two counts of their amended complaint, Malone and Meador asserted negligence on the part of appellants and enumerated the harms for which they were seeking damages. In the third count of the amended complaint, the appellees alleged that Marriott had engaged in "willful, wanton, and reckless" behavior on the morning of July 22, 1989 and had shown "conscious disregard for the safety and well being of Malone and Meador when a great probability of harm existed, and as such, [Malone and Meador were] entitled to punitive damages." In no reasonable way can the appellees' complaint be read as advancing a claim for compensatory damages based on recklessness. Consequently, the jury was not deprived of an opportunity to determine the merits of such a claim, and Malone is not entitled to a new action based on recklessness.

The trial court's decision to order a new trial on Meador's negligence claim was not erroneous, and the court of appeals' reversal of that order was unfounded. Judge Pfeiffer's order was predicated upon two subsections of Civ.R. 59(A), which state:

"A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

" * * *

"(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

" * * *

"(6) The judgment is not sustained by the weight of the evidence * * *."

In evaluating the propriety of the trial court's decision premised on the weight of the evidence, we must note that a reviewing court can reverse such an order for a new trial only upon a finding of an abuse of discretion. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus. "Abuse of discretion" connotes "an unreasonable, arbitrary or unconscionable attitude upon the part of the court." *Poske v. Mergl* (1959), 169 Ohio St. 70, 75, 8 O.O.2d 36, 39, 157 N.E.2d 344, 348, citing *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855; *Klever v. Reid Bros. Express, Inc.* (1951), 154 Ohio St. 491, 43 O.O. 429, 96 N.E.2d 781. In addition, the abuse of discretion standard requires a reviewing court to "view the evidence favorably to the trial court's action rather than to the original jury's verdict." *Rohde*, 23 Ohio St.2d at 94, 52 O.O.2d at 382, 262 N.E.2d at 692. This deference to a trial court's grant of a new trial stems in part from the recognition that the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the "surrounding circumstances and atmosphere of the trial." *Rohde*, 23 Ohio St.2d at 94, 52 O.O.2d at 382, 262 N.E.2d at 692.

It is also important to note that the order of a new trial does not terminate a case; instead, it simply grants a *new* trial. Unlike directed verdicts and judgments notwithstanding the verdict, an order for a new trial does not dispose of litigation; instead, its purpose is to prevent " 'miscarriages of justice which sometimes occur at the hands of juries,' " by presenting the same matter to a new jury. *Rohde*, 23 Ohio St.2d at 93, 52 O.O.2d at 382, 262 N.E.2d at 692, quoting *Holland v. Brown* (1964), 15 Utah 2d 422, 426, 394 P.2d 77, 79.

In light of the standard of review and the policies underlying it, the trial court's order for a new trial based upon the weight of the evidence does not appear to be arbitrary or capricious, given the evidence presented at trial and the seemingly contradictory verdicts rendered by the jury. As Judge Pfeiffer stated in her decision of August 27, 1993, no proof of pecuniary loss to Meador was offered at trial. The most compelling consideration in support of the trial judge's order, however, was the jury's incongruous determinations regarding Meador's and Malone's comparative negligence.

The jury interrogatory forms indicate that both appellees were found negligent, but only Malone's negligence was found to have caused her injuries. Such a disparate set of outcomes is difficult to understand when, as the trial judge noted, both Malone and Meador "invited Gatewood * * * to their room, had drinks with him, went out to several bars, and upon return again allowed him in their room." The trial court went on, recalling that "there were several opportunities for [Meador] to have called either hotel security or other law enforcement for assistance. For example, Gatewood took Malone to his room leaving Meador outside free to return to her room and phone for assistance or knock on doors of other hotel guests for help."

A reasonable person confronted by such a set of facts could validly conclude that the jury's verdict for Meador was against the manifest weight of the evidence. We therefore find no abuse of discretion on the part of the trial court in its determination that the verdict was not supported by the weight of the evidence. Accordingly, it is unnecessary for us to address the trial court's conclusion that the verdict was excessive. We reverse the judgment of the court of appeals and reinstate both the trial court's directed verdict and its order for a new trial for Meador.

*Judgment reversed.*

MOYER, C.J., PFEIFER and COOK, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

ALICE ROBIE RESNICK, J., dissenting. I would affirm the court of appeals' decision in its entirety.