Defendant-appellants, Joseph DeMoss and Ram Motor Freight, Inc. ("Ram"), appeal from the Belmont County Common Pleas Court's denial of their motion for relief from the portion of a jury verdict that awarded punitive damages and attorney fees.
This case arises out of an accident which occurred between a tractor-trailer driven by Mr. DeMoss and a car occupied by plaintiff-appellees, Joseph and Delores Kolakowski. Mr. Kolakowski testified that he was driving westbound in the center lane on Interstate 70 when a truck hit his car causing it to spin in front of the truck, which hit his car again, and then into the concrete barrier in the median. Conversely, DeMoss testified that he was moving from the left lane to the center lane at the same time that Kolakowski was moving from the right lane to the center lane. After hitting Kolakowski, DeMoss braked hard and the tractor-trailer jack-knifed in the center lane.
James Villarreal witnessed the accident and testified that he was driving in the left lane when DeMoss came up behind him going fast. When Villarreal moved to the center lane behind Kolakowski, DeMoss started tailgating a pickup truck driven by Kenneth Rastall. Rastall was uncomfortable with DeMoss's closeness but could not move over due to the heavy flow of traffic. Villarreal noticed DeMoss flashing his lights, using his right turn signal, and drifting into the center lane where Kolakowski was driving even with the cab of the tractor-trailer. Villarreal then saw DeMoss move into the center lane and hit Kolakowski.
Villarreal's passenger, James Huston, testified that the truck changed lanes and hit the car. However, Huston's statement to the police read that the car changed lanes and was hit by the truck. After the accident, Kolakowski's car ended up with its back end sitting on top of the concrete divider in the median. Skids marks on the road showed that the tractor-trailer was straddling the line between the left and center lanes when its brakes locked.
In September 1996, appellees filed a lawsuit based in negligence against DeMoss, Ram, who was DeMoss's employer, and Robert Hickey d.b.a. Sail Transportation and Leasing ("Sail") who owned the tractor-trailer. Kolakowski sought damages for past and future medical expenses, pain and suffering, loss of ability to perform usual activities and lost earnings. Mrs. Kolakowski sought past medical expenses, pain and suffering, and loss of consortium. In August 1997, appellees amended their complaint seeking punitive damages and attorney fees. After depositions were taken, the defendants filed a motion for partial summary judgment on the issue of punitive damages. This motion was denied in May 1998.
The case was tried to a jury from September 1 through 4, 1998, at the conclusion of which the jury returned a verdict finding DeMoss and Ram equally negligent. Sail was absolved of liability. Appellees were awarded $117,227 in compensatory damages. The jury found that punitive damages were warranted against both DeMoss and Ram in the amount of $50,000 each. The jury also awarded attorney fees to appellees. The court entered judgment on the verdict on September 14, 1998, encouraging the parties to file motions on the amount of attorney fees.
On September 21, 1998, appellants filed a motion for judgment notwithstanding the verdict ("JNOV") or in the alternative a motion for a new trial on the issues of punitive damages and attorney fees. Appellants asked for a JNOV on the grounds that the punitive damages award was excessive and motivated by prejudice, and that the evidence was insufficient to have submitted the punitive damages issue to the jury as there did not exist clear and convincing evidence of malice. Appellants asked for a new trial on the grounds that the award was excessive, induced by prejudice, not sustained by the weight of the evidence, and contrary to law. Appellants also suggested remittitur of the amount of punitive damages. On November 19, 1998, the court denied appellants' motion. On December 8, 1998, the court awarded attorney fees and expenses in the amount of $59,895.94. This timely appeal followed.
Appellants set forth three assignments of error. The first two assignments allege:
 "PROOF OF `CONSCIOUS DISREGARD' MUST BE BY CLEAR AND CONVINCING EVIDENCE."
 "PLAINTIFF'S EVIDENCE WAS NOT CLEAR AND CONVINCING AS TO CONSCIOUS DISREGARD."
Pursuant to the pertinent portions of R.C. 2315.21 (B) (1) and (2), punitive damages may be awarded in a civil suit if the acts or omissions of the defendant demonstrate malice and the plaintiff has suffered actual damage from the defendant's acts or omissions. There are two types of malice: "(1) the state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty
(1987), 32 Ohio St.3d 334, syllabus. It is the second type of malice that is relevant to the case at bar. Appellants argue that there exists no clear and convincing evidence to support the conclusion that Ram and DeMoss acted with conscious disregard for the safety of others. Conscious disregard "requires the party to possess knowledge of the harm that might be caused by his behavior." Id. at 335. Extremely reckless conduct will support a finding of conscious disregard. Cabe v. Lunich
(1994), 70 Ohio St.3d 598, 601; Villella v. Waikem Motors, Inc.
(1989), 45 Ohio St.3d 36, 37.
Appellees argue that Ram's malice is manifested in the testimony of Charlene Schwab who is Ram's safety monitor and hiring manager. Schwab hired DeMoss in November 1994. She had previously obtained a motor vehicle report ("MVR") which showed that DeMoss caused an accident in California in April 1994 which resulted in an improper lane change violation. The MVR also disclosed a citation for improper lane usage which occurred in January 1994 in Oklahoma, and a citation for passing a scale in November 1993 in Kentucky. Furthermore, DeMoss completed a certification of violations which admitted that he received two speeding tickets in July and August 1994. Appellants argue that DeMoss's two speeding tickets were not serious violations because he was going less than fifteen miles over the speed limit.
Ram's hiring standards required that drivers have no more than three moving violations in the past twelve months and no more than four in the past thirty-six months. The prevailing industry standard appears to be no more than two violations in the last year. In preparation for trial, appellees' counsel found even more moving violations. Moreover, on January 3, 1995, three weeks before the accident at issue, DeMoss was cited for hitting a car while changing lanes in the truck. Schwab stated that DeMoss was not disciplined because it was a minor accident with no injuries. Appellees' transportation safety expert testified that he would not have hired or at least would have fired DeMoss due to his rash of moving violations in close proximity. He stated that not suspending DeMoss for the January 3, 1995 incident demonstrates a conscious disregard for the rights of others.
Appellants argue that a JNOV should have been granted pursuant to Civ.R. 50. A JNOV can be granted only if the trial court finds that reasonable minds could only come to a conclusion that is adverse to the nonmovant. Texler v. D.O. SummersCleaners Short Laundry Co. (1998), 81 Ohio St.3d 677, 679. Appellants argue in the alternative that their motion for a new trial should have been granted pursuant to Civ.R. 59 (A)(6) and (7) because the award, of punitive damages is not sustained by the weight of the evidence and is contrary to law. (Appellants' argument that a new trial should have been granted pursuant to Civ.R. 59 (A) (4) due to an allegedly excessive award based on prejudice will be discussed under the third assignment of error)
However, it appears that the trier of fact could reasonably have found that Ram consciously disregarded DeMoss's high accident potential in order to prosper economically. The extremity of the situation is emphasized by the fact that Ram's standards for hiring were less stringent than industry standards, and they still failed to meet this lesser standard when they hired and retained DeMoss. The jury could reasonably have believed that Schwab possessed "subjective knowledge of the danger posed to another" which constitutes conscious disregard. See Malone v.Courtyard By Marriot L.P. (1996), 74 Ohio St.3d 440, 446.
As for DeMoss, appellees argue that his malice is evident in the eyewitness testimony which characterized his fierce driving methods in the minutes preceding the crash as purposeful intimidation. There is evidence that DeMoss was speeding, tailgating, weaving, and trying to force his way into the center lane. DeMoss denied this conduct; however, the jury could reasonably have believed Villarreal's description of DeMoss's aggressive driving. Credibility of witnesses and weight to be given the evidence are determinations that are primarily within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. As such, a finding of conscious disregard on the part of DeMoss is not against the weight of the evidence. See State v. Thompkins (1997)78 Ohio St.3d 380.
Appellant's first and second assignments of error are without merit.
Appellant's third assignment of error provides:
 "ADMISSION OF EAR OFF CONVICTION EXCEEDED IN PREJUDICIAL EFFECT ANY PROBATIVE VALUE ON CREDIBILITY."
This argument is based upon the following facts: DeMoss was deposed on September 30, 1997. When asked about previous criminal convictions, DeMoss admitted to a 1989 felonious assault conviction in Kentucky. When asked if he used a weapon, DeMoss said that he used his fists. When asked about the extent of the victim's injuries, he said that there was a cut above the victim's ear. Appellees' attorney later discovered that DeMoss left out the fact that he bit the right ear off of the victim of the assault. After an in camera hearing, the court overruled appellants' objection to appellees' questioning of DeMoss about lying under oath with regards to the details of his assault conviction. Thus, on cross-examination of DeMoss, appellees' attorney inquired into the discrepancy. DeMoss responded by saying that it was embarrassing, irrelevant to driving a truck, and none of anyone's business.
Pursuant to Evid.R. 609 (A) (2), the credibility of the defendant may be attacked by evidence that the defendant was convicted of a crime that is punishable by more than one year of imprisonment. Since DeMoss's conviction was less than ten years old, we need not discuss the test set forth in Evid.R. 609 (B) DeMoss's conviction is only admissible, however, if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice. Evid.R. 609 (A) (2). Our review of the trial court's determination is governed by the abuse of discretion standard of review. State v. Allen (1995), 73 Ohio St.3d 626.
On appeal, appellants argue that informing the jury that DeMoss bit someone's ear off was more prejudicial than probative. Appellants contend that the trial court abused its discretion by allowing this information into evidence. Appellees argue that the ear-biting incident was admissible to impeach DeMoss's credibility. If DeMoss's ear-biting assault was introduced solely because he was convicted of a crime, then we would probably hold that the probative value does not outweigh the danger of unfair prejudice. However, because DeMoss was untruthful about the details of the assault when asked about it under oath at a deposition, the probative value is stronger. Moreover, Evid.R. 608 (B) provides in pertinent part:
 "Specific instances of conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of a crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *."
Therefore, DeMoss's specific instance of lying while under oath at a deposition can be inquired into on cross-examination in order to establish his character for untruthfulness. DeMoss's credibility is a major issue in this case for he claims that he and Kolakowski moved to the center lane simultaneously. As such, the trial court did not abuse its discretion by allowing appellees' counsel to cross-examine DeMoss about the details of his assault conviction.
Punitive damages may be excessive when the award is determined to have been the product of passion or prejudice. Williams v.Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 480. "If the punitive damages award is not the result of passion and prejudice, and not the result of legal error, it is generally not within the province of a reviewing court to substitute its view for that of the jury." Id. Due to our analysis of the propriety of the cross-examination on DeMoss's conviction, and the fact that there is no disparity between the potential harm to appellees and the amount of the punitive damages award, the award of punitive damages in the case at bar is not the product of passion or prejudice and is not excessive. Accordingly, appellant's third assignment of error is without merit.
The decision of the trial court is hereby affirmed.
Vukovich, J, concurs in part and dissents in part; see Waite, J., concurs/concurring in part and dissenting in part opinion.
 ____________________ Gene Donofrio Judge