OPINION
Thomas D. Schultz and Cohiba Corporation, plaintiffs-appellants, commenced an action against National Revenue Corporation ("NRC"), defendant-appellee, asserting that defendant breached an amended consulting agreement dated January 5, 1998, which provided that Shultz, through Cohiba, his personal holding company, would provide services to NRC until December 31, 1998, for certain stated compensation. Plaintiffs allege that on February 19, 1998, defendant terminated the agreement without cause. Schultz further contends that as part of his 1997 compensation under prior agreements, he was entitled to certain compensation and benefits which has not been provided to him.
In its amended answer, defendant admits the existence of the contracts set forth by attachments to plaintiffs' complaint, but denies that it wrongfully breached the contracts with either Schultz or Cohiba. They assert that due to certain improper conduct by Schultz, they were entitled to terminate its agreement with plaintiffs.
After plaintiffs had presented their case before a jury, the trial court granted a directed verdict in regard to the breach of contract claim for any payments due after the termination in January 1998 on the basis that defendant had just cause to terminate the amended consulting and sales development agreement entered into on January 5, 1998 and that plaintiff Cohiba suffered no damages as a result of that termination.
(The trial court also entered a directed verdict in granting the claim of Shultz for damages for the fourth quarter of 1997 which will be dealt with separately after discussion of the breach of contract claim for termination of the January 5, 1999 agreement.)
NRC was founded by Richard Schultz, plaintiff's older brother, in 1973. In 1993, Richard Schultz hired his brother, plaintiff Thomas Schultz, as an area sales manager. After several advancements, NRC, through Richard Schlutz, selected Thomas Schultz and Cohiba, his personal holding company, as vice-president for sales. In the meantime, in 1994, Deluxe Corporation purchased NRC. Richard Schultz continued as president.
NRC and plaintiffs entered into two contracts rather than one in 1997 when Thomas Schultz and Cohiba were given separate contracts to perform the total duties of vice-president for sales. The undisputed reason was to prevent Thomas Schultz's commissions from being subject to withholding. In other words, with the knowledge of both NRC and plaintiff Schultz, the two contracts executed in 1997 were designed solely to contract for Schultz to perform the duties of vice-president of sales for NRC, albeit under two different entities. As plaintiff, Thomas Schultz, said "Cohiba was basically me; I was Cohiba."
After Deluxe Corporation took over, it appears that relations deteriorated between Richard Schultz and Deluxe Corporation, ultimately resulting in the termination in February 1998 of both Richard Schultz as president as well as other members of his senior management team. Prior to that time, however, in January 1998, Richard Schultz, as president of NRC, accepted plaintiff Thomas Schultz's resignation as vice president for sales with the specific provision that Cohiba's contract which did not terminate until December 31, 1998 would continue. Thomas Schultz's resignation was tendered on January 2, 1998 and an amendment to the Cohiba contract took place on January 5, 1998. The amended contract was signed by Richard D. Schultz, president on behalf of NRC and Thomas D. Schultz, president of Cohiba Corporation. They agreed to amend the original Cohiba Corporation contract to reflect that the services provided by Cohiba would be coordinated through the company's president (i.e., Thomas Schultz), instead of the senior vice-president of sales (who no longer existed since Thomas Schultz had resigned from that capacity). The revenues due Cohiba were modified in accordance with Cohiba's additional duties which was to provide the services of a senior independent division vice-president, including managing the responsibilities formerly provided by Thomas Schultz as vice-president of NRC.
On February 19, 1998, Mike Reeves, the new president of NRC notified Thomas Schultz that they had terminated his consulting and sales agreement dated April 8, 1997 as amended January 5, 1998, and that he was relieved of all duties effective January 20, 1998.
As pertinent to the cross-appeal, NRC also notified Thomas Schultz that he would receive final compensation and information regarding the status of his benefits and rates due or applicable in 1997.
During the course of plaintiffs' evidence, their basic theme was that Thomas Schultz and his personal holding company Cohiba were terminated solely because the new owner, Deluxe Corporation, was getting rid of all the people associated with Richard Schultz. One of those persons was his brother, Thomas, who at that time was conducting the duties of vice president of sales through his personal holding company, Cohiba. Defendant pled justification for termination of Thomas Schultz, which defense was supported, at least in part, by cross-examination of plaintiffs' witnesses. Defendant NRC was able to establish certain deficiencies in conduct relating to Thomas Schultz which they vigorously contended was the reason for his termination, rather than the desire to terminate him simply because of his relationship with Richard Schultz.
The trial court found that NRC was justified in terminating Thomas Schultz because of problems with his conduct.
Plaintiffs' first assignment of error is that the trial court incorrectly granted a directed verdict in favor of defendant on their claim for breach of contract.
Civ.R. 50(A)(4) provides that a motion for a directed verdict may be granted if "* * * the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party * * *." The issue is a question of law: was there sufficient, material evidence presented at trial on this issue to create a factual question for the jury. Malone v. Courtyard by Marriott
(1996), 74 Ohio St.3d 440, 445. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon such motion. Posin v. A.B.C. Motor Court Hotel, Inc.
(1976), 45 Ohio St.2d 271, 275.
The key issue in determining whether defendant breached its contract with Cohiba in terminating the service agreement prior to its stated date for termination on December 31, 1998, was whether the reasons given by defendant for the termination of Thomas Schultz and Cohiba were merely a subterfuge for other reasons that did not justify the termination. While some of reasons asserted by defendant could be proper reasons for termination of Thomas Schultz's activity at NRC, that would not be true if NRC had prior knowledge of the activities and had waived any remedy that they may have timely utilized. Knowledge to a corporation comes through its employees. In this instance, the key employee, the president of the corporation, albeit the brother of Thomas Schultz, apparently had full knowledge of the activities of Thomas Schutlz and chose to continue to contract with him and Cohiba and to utilize their services despite that knowledge. There was evidence that Thomas Schultz had performed rather admirably in relation to increase of sales. While it is true that after-acquired knowledge may be utilized as a reason for discharge even though it was not known or not the reason given at the time of discharge, there was a genuine issue of fact as to whether it was after-acquired knowledge.
In considering Thomas Schultz and Cohiba, it is proper to treat them as one unit. Both parties recognized at all times during the formation of these contracts that Thomas Schultz would be performing all the services and that Cohiba was merely a shell for obtaining the services of Thomas Schultz, either as an employee or independent contractor. Cohiba had no other employees. Hence, NRC's notice sent only to Thomas Schultz, but which refers to his holding corporation and the amended contract of January 5, 1998 with Cohiba, was sufficient to give notice to Cohiba. It is not a situation where the parties contemplated that Cohiba could hire someone else to perform these duties. Duties performed by Cohiba were to be performed by Thomas Schultz. Similarly, contrary to the trial court's holding and defendant's assertions, Cohiba cannot be considered as having sustained no damages because they were paying all of the compensation that they received to Thomas Schultz. Cohiba and Thomas Schultz are to be considered as one in determining breach of contract and damages, if any, caused to Thomas Schultz as a result of the February 20, 1998 termination, if it was a wrongful termination. This was not the usual case of hiring a separate corporation. NRC was hiring a person, namely Thomas Schultz, through a corporation that was Thomas Schultz, and they were entitled to rely on him, his integrity and his ability to perform. Consequently, there was a basis to fire Cohiba if there was a basis to fire Thomas Schultz. This will be a jury issue as to breach of contract on remand.
Plaintiffs' first assignment of error is sustained.
In their second assignment of error, plaintiffs contend that the trial court erred in failing to direct a verdict in their favor after defendant failed to make an opening statement.
There is no validity to this assignment of error. After plaintiffs made their opening statement, defendant requested the trial court that they be given permission to defer their opening statement until the conclusion of plaintiffs' evidence. The trial court granted this motion, a decision which was in the discretion of the court who may control the procedure applicable to the order of proceeding. See R.C.2315.01.
Civ.R. 50(A)(1) does provide that a motion for a directed verdict "may be made on the opening statement of the opponent * * *." However, due to the trial court's discretionary ruling permitting defendant to defer its opening statement that time had not yet arisen when plaintiffs moved for a directed verdict based on the lack of an opening statement by defendant. The trial court did not err in overruling plaintiffs' motion for a directed verdict based on this reason.
Plaintiffs' second assignment of error is overruled.
As previously noted, plaintiff, Thomas D. Schultz, sought damages in his complaint for entitlement to fourth quarter 1997 bonus compensation. During his case, Schultz presented evidence that NRC had not paid him a bonus for the fourth quarter of 1997, evidence which, in fact, was uncontested, and that he was entitled to a bonus of $44,776 plus pre-judgment interest. The trial court granted Thomas D. Schultz a judgment for $44,776 plus pre-judgment interest and rendered judgment accordingly. The directed verdict was granted following the presentation of plaintiffs' evidence without defendant being given an opportunity to present any evidence contrary to plaintiffs' claims. The reason given in the trial court's judgment entry was that "since NRC failed to plead certain affirmative defenses and was therefore precluded from presenting its evidence relating to the amount of fourth quarter 1997 bonus due plaintiff Schultz," plaintiffs' evidence will be accepted and judgment rendered accordingly.
The issue in the cross appeal is whether defendant was required to plead the affirmative defense of payment as set forth in Civ.R. 8(C) or be precluded from presenting any evidence that Schultz was not entitled to the amount that he claimed.
There was no specific pleading of payment in defendant's answer. Defendant admitted that Schultz was to receive compensation and benefits including his share of participation in the 1997 NRC annual management incentive plan, but denied that they had refused to pay plaintiffs' compensation and benefits specified by the plan.
The evidence disclosed a more complicated system of payment between NRC and Schlutz than might ordinarily apply. Evidence to which there was no objection that occurred during plaintiffs' case indicated that Schultz had received at least $30,000 in advancements from NRC in 1997 and that he applied his third quarter 1997 bonus compensation to reduce his indebtedness. The issue of whether he repaid all of his advances was not firmly established. There was evidence that Schultz may have repaid only part of the advances prior to fourth quarter compensation and that NRC had withheld and paid on his behalf substantial amounts in local, state and federal tax.
While broadly construed, the above evidence might indicate payment and certainly a specific defense of payment may have been advisable. The evidence seems to indicate more accurately offsets due NRC from prior advances. In fact, it seems clear beginning with the letter of February 1998 to Schultz that both parties realized amounts still due in 1997 were in issue. It should have come to no surprise to plaintiffs that there was no clear or set amount due when all the extenuating circumstances were factored into the formula.
Civ.R. 15(B) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The Ohio Supreme Court has held that the following factors are to be considered when determining whether the parties to a lawsuit have impliedly consented to litigate an issue: (1) whether the parties recognize that an unpleaded issue entered the case, (2) whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were tried on a different theory, (3) whether the witnesses were subjected to extensive cross-examination on the issue and (4) whether the amendment would result in substantial prejudice to a party. State ex rel. Evans v. BainbridgeTwp. Trustees (1983), 5 Ohio St.3d 41. In order to justify the exclusion of evidence on the basis of prejudice, the objecting party must satisfy the court that admission of such evidence will put him to serious disadvantage in presenting his case. Hall v. Bunn (1984),11 Ohio St.3d 118. In this case, it does not seem that there was any question about there being an issue concerning the amount due for the fourth quarter of 1997, as indicated in the letter of February 19, 1998.
When relevant evidence was heard on the unpled issue, plaintiffs did not object. Schultz answered, without objection, questions concerning the advances he took from NRC in 1997 and admitted without objection that he used his third quarter 1997 bonus compensation to reduce the amount he owed NRC as a result of the previous advances. Plaintiffs did not object when NRC questioned witness Monnett on cross-examination about Schlutz's advances against his bonus but, instead, questioned him about Schultz's arrangement with Lindsay Spiess to apply Spiess' commission checks from NRC to reduce his indebtedness. He also introduced into evidence a document that reflected the calculations NRC used to determine the net amount of quarter 1997 bonus compensation to which Schultz was entitled. Even plaintiffs' counsel stated "I think there are substantial differences over credit for, against payment of the bonus * * * ." Although he continues, "based on the information we saw today," that comment was made on Friday, April 30, 1999 prior to Monday when the bonus compensation was to be decided. While it may have been proper for the trial court to grant a continuance to plaintiffs to obtain rebuttal testimony since they contended that a key witness regarding this issue was in Philadelphia, it was an abuse of discretion for the trial court to deny defendant its opportunity in court on this issue, which related to advances or setoffs made prior to the fourth quarter of 1997.
Defendant's assignment of error in the cross-appeal, which is that the trial court erred when it granted plaintiff Schultz's motion for a directed verdict on the issue of his entitlement to fourth quarter 1997 bonus compensation in the amount of $44,776, is sustained.
Plaintiffs' first assignment of error is sustained and plaintiffs' second assignment of error is overruled. Defendant's cross-assignment of error is sustained. The case is remanded to the trial court to conduct a jury trial on the merits of all the issues in the complaint and cross-complaint.
 _____________________ McCORMAC, J.
BROWN and DESHLER, JJ., concur.