OPINION
Plaintiffs-appellants, Gary W. Prowant and Kathleen R. Prowant, appeal from an order of the Allen County Court of Common Pleas, which granted a new trial in favor of defendants-appellees, James Massie and Nancy Massie. The Prowants had obtained a jury verdict in the amount of $375,000 plus attorney fees for an action in fraud stemming from the sale of real estate. For the reasons hereinafter stated, we reverse the order granting a new trial.
The pertinent facts and procedural history are as follows. The Prowants purchased real estate located in Allen County from the Massies for the sale price of $340,000. The purchase agreement was executed on August 5 and 6, 1998. The real estate purchased was a 78 acre parcel containing 94 improved camp sites. The improved sites included water, sewage, and electricity. In addition to the improved sites, there were also primitive camping sites, which included limited utilities but no sewage.
To finance the purchase, the Prowants applied for a loan through the American Community Bank, N.A. ("Americom"), a predecessor in interest to The Ohio Bank. The Prowants submitted their initial application for the loan shortly after August 5, 1998, and filed a formal application for a Small Business Administration ("SBA") guaranteed loan on October 22, 1998. As part of the SBA loan process, the SBA requires an investigation and assessment of the environmental risks on all primary collateral offered as security for the loan. The purpose of the investigation and assessment is to determine whether the property is subject to environmental contamination.
On October 19, 1998, Mark Klein, the bank officer responsible for the loan, met with the Massies to review the Environmental Questionnaire with them. Mr. Klein filled out the answers to the questionnaire as the Massies responded to his questions. Question 5 of the questionnaire asked the following: "Does the applicant have all relevant environmental permits and/or notifications in place?" Mr. Klein recorded the Massies' answer as "No", and wrote next to the answer that the "EPA looks at water tests." Mr. Klein also noted that the campground is subject to health department inspections, and later recommended a follow-up with the health department on water and sanitation inspections. Upon the completion of the questionnaire, the Massies and Prowants affixed their signatures.
Between the time of the Prowants' first contact with Mr. Klein and their execution of the formal loan application, Mrs. Prowant assembled a business plan projecting their expectations for the campgrounds. Part of the plan included an estimate for the cost of adding an additional thirty new campsites, a means to increase revenue thereby making the loan possible. The Massies knew of the Prowants' desire to expand the number of campsites and were aware that an EPA permit for the sewage system would be required for an expansion.
The Prowants contacted the Ohio EPA ("OEPA") to inspect the campgrounds and to make sure that the current sewage system would permit the new lots to be tied in. On August 12, 1998, Thomas Poffenbarger of the OEPA visited the campsite to perform an inspection requested by Mrs. Prowant. Mr. Poffenbarger was met at the campground by Mrs. Massie. Mr. Poffenbarger explained that he was contacted by Mrs. Prowant regarding a possible expansion of the campground and wanted to get information on the sewage system. According to Mr. Poffenbarger, Mrs. Massie said the campground was no longer for sale. Mrs. Massie testified that the inspector misunderstood her to say that the sale was off. She claimed that she told Mr. Poffenbarger that she did not know if the sale was going to go through.
Following this disputed exchange, Mrs. Massie told him the former name of the campground, Camp Tawa, so that he could look up the records back at the office. Mr. Poffenbarger then drove around the campground to get an idea of the layout but did not observe the sewage system. Mr. Poffenbarger had no further contact with the Prowants or the Massies until March 1999.
The closing of the loan occurred on November 30, 1998. At this time, the Prowants were unaware that no follow-up occurred with the health department on water and sanitation inspections per Mr. Klein's notes on the Environmental Questionnaire. The Prowants took possession of the property around January 1, 1999.
On March 17, 1999, Mr. Poffenbarger met with the Prowants, representatives of the County Health Department, and the Prowants' contractor, Charles Boughan, at the campground. The meeting was held for the purpose of a site inspection relative to the Prowants' proposed expansion of the campground. Mr. Poffenbarger issued a letter to the Prowants advising them that the existing sewer system was not approved and that "it is necessary for waste water disposal improvements to be instructed."
The Prowants hired an engineer, Brad Core, to develop a cost estimate relative to the OEPA's requirements for waste water disposal improvements. Mr. Core offered two alternatives. The lower priced system sufficient to handle the waste of the existing 94 campsites, he estimated, would cost $305,000 to $355,000. At trial, the Massies' brought forth their own expert, Paul Brock, who testified that his proposed system would cost roughly $90,000. On cross-examination, Mr. Brock revealed that his initial estimate was for the sewage-treatment plant only and relied on utilizing a portion of the existing sewage system. Mr. Brock testified that if he were to replace the whole system it would cost $184,000.
On November 23, 1999, the Prowants filed a complaint against the Massies and The Ohio Bank. The Prowants' claim against the bank was settled and dismissed with prejudice. The claims against the Massies alleged material misrepresentation and failure to disclose facts about the real estate being purchased by the appellants. The matter was tried before a jury, who issued a general verdict in favor of the Prowants. The jury verdict awarded the Prowants compensatory damages of $300,000, punitive damages in the sum of $75,000, and attorneys' fees.
The Massies filed a motion for judgment notwithstanding the verdict, or in the alternative, a new trial. The trial court did not rule on the motion for JNOV but did grant the alternative request for a new trial.
The Prowants now appeal asserting two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I
"The trial court erred and abused its discretion in setting aside the jury verdict and granting a new trial to defendants pursuant to Civ.R. 59(A)(4) on the basis the award of damages was excessive and given under the influence of passion or prejudice."
In their first assignment of error, the Prowants contend that the trial court erred in granting the Massies a new trial on grounds that the jury's verdict in favor of the appellants was excessive and given under the influence of passion or prejudice. The Prowants argue that the trial court presented no analysis, conclusory or otherwise, which addressed the evidence presented to the jury on the question of damages. Nor, the Prowants maintain, did the trial court identify any proof of passion or prejudice against the Massies. The appellants submit that the trial court's decision is an abuse of discretion and should be reversed. This Court agrees.
Civ.R. 59(A) states, in relevant part, that a new trial may be "granted to all or any parties and on all or part of the issues upon the following grounds: * * * (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice[.]" In Rohde v.Farmer, the Ohio Supreme Court held that: "Where a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court."[1] An "abuse of discretion" connotes a determination that the trial court's attitude is unreasonable, arbitrary, unconscionable.[2] Furthermore, "the abuse of discretion standard requires a reviewing court to `view the evidence favorably to the trial court's action rather than to the original jury's verdict.'"[3] This deference to the trial court recognizes that the trial judge is better situated than the reviewing court to pass on questions of witness credibility and the atmosphere of the trial.[4]
When reviewing the grant of a new trial based on Civ.R. 59(A)(4), the size of the verdict, without more, is insufficient evidence upon which to prove passion and prejudice.[5] The complaining party must be able to point to something in the record which wrongfully inflamed the sensibilities of the jury.[6] To determine whether passion or prejudice affected an award of damages so as to warrant a new trial, the reviewing court should "consider the amount of the verdict, whether the jury considered incompetent evidence, improper argument by counsel, or other improper conduct which can be said to have influenced the jury."[7]
In the present case, the record shows that the jury did not consider incompetent evidence or improper argument by counsel. The trial process proceeded smoothly with very few objections, and the judge effectively controlled what arguments and evidence the attorneys could bring before the jury. Attorneys for both parties cooperated with the court's authority and respectfully submitted their arguments to the jury.
As noted by the trial court in its Order Granting a New Trial, there was sufficient evidence to enable the jury to reasonably determine its verdict in favor of the Prowants. Once the jury found that the fraud committed by the Massies was the proximate cause of the damages incurred by the Prowants, the jury had a reasonable basis for determining the amount of compensatory damages sustained. Both parties produced experts to testify regarding the cost of constructing a sewage treatment facility to comply with the OEPA's requirements. The Massies' expert testified that his proposed system would cost around $90,000. On cross-examination he admitted that this estimate was for the plant only and that the full project would cost $184,000. The Prowants expert testified that the installation of a system designed to service the 94 existing campsites would cost between $305,000 and $355,000. The jury, awarding $300,000 in compensatory damages, apparently believed the Prowants' expert.
A new trial may not be granted on the basis of excessive damages "unless the movant is able to establish that the verdict resulted from jury passion and prejudice and that the damages were `so overwhelmingly disproportionate as to shock reasonable sensibilities.'"[8] Upon our review of the record, we conclude that the Massies did not establish that the verdict resulted from jury passion and prejudice and the damages awarded the appellant were not so overwhelmingly disproportionate as to shock reasonable sensibilities.
Therefore, we find that the trial court abused its discretion in granting the Massies a new trial on such grounds. The appellants' first assignment of error is sustained.
 ASSIGNMENT OF ERROR NO. II
"The trial court erred and abused its discretion in granting a new trial to defendants pursuant to Civ.R. 59(A) for unspecified reasons when it determined `there was sufficient evidence to enable the jury to conclude that the negligence/fraud of the Defendants was a proximate cause of Plaintiffs' damages.'"
Civ.R. 59(A) provides that a new trial may be granted in the discretion of the trial court for good cause shown. In their second assignment of error, the Prowants contend that the trial court abused its discretion by granting a new trial for good cause shown when it had already concluded that there was sufficient evidence supporting the unanimous jury verdict.
First, we note that the Massies filed a motion for a new trial on the sole ground of Civ.R. 59(A)(4), citing "excessive damages, appearing to have been given under the influence." No memorandum in support was filed with the motion offering facts or incidences from the record to bolster their argument that a new trial should be granted. The Massies did not challenge the verdict in any respect except with regard to the amount of the reward.
In its judgment entry, the trial court listed nine factors showing "good cause" for awarding the Massies a new trial. The first item was a "present condition" clause within the purchase agreement, which made the purchase subject to examination by the purchaser. With respect to the purchase agreement, the trial court also observed that nothing in the purchase agreement made the sale contingent upon OEPA approval. The court then surmised that even if the Massies' concealment of the sewer system's deficiencies was fraudulent, it should not have been relied upon by the Prowants. This observation stemmed from the fact that there was a period of months between when the inspection by Mr. Poffenbarger should have taken place and when the final closing occurred. The Prowants, the trial court concluded, should have contacted the OEPA for the results of the inspection before closing on the property.
The trial court, in conclusion, stated: "The jury system is a part of our legal process that should and must be upheld whenever possible. In the instant case, however, the Court finds that the jury assessment of liability and damage to be so overwhelmingly disproportionate as to shock reasonable sensibilities. Justice requires a new trial.
"The Court therefore finds that there was sufficient evidence to enablethe jury to conclude that the negligence/fraud of the defendants was aproximate cause of plaintiffs' damages. However, for the reasons set forth above and in it [sic] discretion, the Court finds defendant's Motion for a New Trial well taken." (Emphasis added.)
Because of this turn-about conclusion, we are left to wonder at the relevance of the aforementioned list of factors showing good cause. Did it relate to the sufficiency of the evidence or some other factor? If, as the trial court found, there was sufficient evidence for the jury to conclude that the Massies' negligence/fraud was a proximate cause of the Prowants' damages, the trial court has not shown good cause pursuant to Civ.R. 59(A) for awarding a new trial. The decision is, at best, arbitrary, and we accordingly find that the trial court has abused its discretion. The Prowants' second assignment of error is sustained.
Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed.
SHAW, P.J., and BRYANT, J., concur.
[1] (1970), 23 Ohio St.2d 82, paragraph one of the syllabus.
[2] Malone v. Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440,448.
[3] Id., quoting Rohde, 23 Ohio St.2d at 94.
[4] Id.
[5] American States Insurance Co. v. Sovereign Chemical Co., Ninth Dist. No. 20794, 2002-Ohio-3180, at ¶ 16.
[6] Id.
[7] Dillon v. Bundy (1991), 72 Ohio App.3d 767, 774.
[8] Frost-Balazowich v. Yehnert, 9th Dist. No. 20602, 2002-Ohio-11, at ¶ 12, quoting Pena v. Northeast Ohio Emergency Affiliates, Inc. (1995), 108 Ohio App.3d 96, 104.