DECISION AND JUDGMENT ENTRY
{¶ 1} Rekia M. Pierce appeals the probate court's creation of a guardianship over her son, Hunter Chase-Tyler Pierce, in favor of Glen I. and Debra S. Pierce and the court's denial of her Motion for a New Trial concerning that entry. Initially, she contends that the probate court lacked jurisdiction to establish the guardianship because her son was the subject of a neglect/dependency action that was filed in juvenile court prior to the issuance of the letters of guardianship. Because we conclude that each court had concurrent jurisdiction, the mere filing of the neglect/dependency complaint in juvenile court prior to the probate court's entry of guardianship does not divest the probate court of jurisdiction. However, we conclude that the trial court's denial of the Motion for a New Trial was an abuse of discretion. Appellant was entitled to notice of the guardianship hearing where the trial court continued the original hearing for Appellant to retain counsel. The record demonstrates that the trial court's finding that Appellant received actual notice of the rescheduled hearing date was unreasonable. Therefore, we reverse the court's denial of Appellant's Motion for a New Trial.
 {¶ 2} In July 2002, Appellees filed an Application for Appointment of Guardian of Minor in the Ross County Court of Common Pleas, Probate Division, seeking guardianship over Mr. Pierce's grandson and Mrs. Pierce's step-grandson, Hunter. Along with the application, Appellees filed a Waiver of Notice and Consent signed by Appellant and Jon Fisher, Hunter's father, agreeing to the appointment of Appellees as guardians of Hunter. The court scheduled a hearing for September 3, 2002 and sent copies of the hearing notice to Appellant, Appellees, and Mr. Fisher. The notice that was sent to Appellant was returned to the court marked "attempted not known."
 {¶ 3} Nonetheless, Appellant and Mr. Fisher appeared at the guardianship hearing and indicated that they no longer consented to the appointment of Appellees as guardians of Hunter. Based on their statements, the court continued the hearing for approximately thirty days so Appellant and Mr. Fisher could retain counsel.
 {¶ 4} Following this initial hearing, Hunter became the subject of a neglect/dependency complaint filed in the Ross County Court of Common Pleas, Juvenile Division. Apparently, both the probate court and the juvenile court scheduled hearings for October 4, 2002. The probate court hearing was scheduled for 8:00 a.m. and the juvenile court hearing was scheduled for 9:00 a.m.
 {¶ 5} On October 4, 2002, Appellant and Mr. Fisher failed to appear for the 8:00 a.m. hearing before the probate court. That court approved Appellees' guardianship application based on Appellant's and Mr. Fisher's original consent to the guardianship. Appellant did, however, appear for the 9:00 a.m. juvenile court hearing where she learned that the probate court had granted Appellees' request for guardianship. Apparently, the juvenile court then dismissed the dependency and neglect actions based on the grant of guardianship over Hunter to Appellees.
 {¶ 6} On October 9, 2002, Appellant filed a Motion for New Trial under Civ.R. 59 with the probate court. In her motion, Appellant asserted that, although she was aware of the 9:00 a.m. hearing before the juvenile court, she had not received notice of the 8:00 a.m. guardianship hearing in the probate court. Appellant asserted that Appellees had a history of removing Appellant's mail from her mailbox and she believed they had removed her hearing notice.
 {¶ 7} In February 2003, the probate court held a hearing to address Appellant's Motion for a New Trial. Appellant testified that she received notice of the October 4, 2002, 9:00 a.m. hearing in the juvenile court, but never received notice of the 8:00 a.m. hearing in the probate court on the same date. Appellant further testified that, had she known of the guardianship hearing, she would have appeared and that she did not consent to the appointment of Appellees as guardians of Hunter. Appellant stated that she has observed Appellants removing mail from her mailbox and that they admitted their actions when confronted.
 {¶ 8} On cross-examination, Appellant testified that she learned of the September 3, 2002 probate hearing from her attorney, Cherita Stout, and that Appellant filled out the paperwork that same morning so that Ms. Stout would be approved as her attorney. Appellant testified that she did not inform Ms. Stout that the probate court had granted a continuance because Ms. Stout had been present at the hearing. On redirect examination, Appellant testified that she was not sure that Ms. Stout was representing her on September 3, 2002 and could not recall the exact date Ms. Stout was retained.[1]
 {¶ 9} Jon Fisher then testified that he also never received notice of the hearing in the probate court on October 4, 2002.
 {¶ 10} In response to Appellant's motion, Mr. Pierce testified that the probate court was having problems sending notices to Appellant. Mr. Pierce spoke to Appellant and she told him to pick up the notice relating to the October 4th hearing and bring it to her. Mr. Pierce testified that he delivered the notice of the probate hearing to Appellant prior to the hearing date.
 {¶ 11} Mrs. Pierce testified that she was with her husband when he removed the hearing notice from Appellant's mailbox and delivered it to her. After Appellant opened the notice, she handed it to Mrs. Pierce and it was identical to the notice Appellees received. Mrs. Pierce further testified that she had never removed any other types of mail from Appellant's mailbox.
 {¶ 12} Following the hearing, the probate court allowed Appellant and Appellees to file written arguments supporting their respective positions as to the motion. Subsequently, the court issued a journal entry overruling Appellant's motion. Specifically, the court found that Appellant and Mr. Fisher appeared at the initial hearing on September 3, 2002 and requested a continuance, that Appellant had secured counsel prior to the September hearing but that counsel was unable to appear,[2]
and that the court had granted the requested continuance. The court then found that Appellant had "waived her right to notice and further had actual notice of the pendency of the guardianship proceedings for which she had already secured legal representation." Therefore, the court found no irregularity, misconduct or good cause justifying a new trial.
 {¶ 13} Appellant appeals the probate court's decisions, citing the following errors: "Assignment of Error No. 1: The trial court erred by appointing a guardian for Appellant's minor child based upon Appellant's written consent after having actual knowledge that Appellant and the natural father of the child had withdrawn their consent. Assignment ofError No. 2: The trial court abused its discretion by denying Appellant a new trial after hearing evidence that she did not receive notice of the October 4, 2002 hearing. Assignment of Error No. 3: The trial court abused its discretion by denying Appellant a new trial even though Appellant appeared personally within one hour after the scheduled hearing and wished to contest the appointment of a guardian. Assignment of ErrorNo. 4: The probate court lacked jurisdiction to appoint a guardian for a child about whom a complaint was pending in juvenile court alleging that the child was abused and/or dependent." Because Appellant's final assignment of error raises a jurisdictional question, we consider that assigned error first.
 {¶ 14} In her fourth assignment of error, Appellant argues that the trial court lacked jurisdiction to appoint a guardian for Hunter in October 2002 because a complaint alleging that Hunter was a neglected or dependant child was pending in the juvenile court at that time. Essentially, Appellant contends that the filing of the action in juvenile court divested the probate court of jurisdiction.
 {¶ 15} Under R.C. 2101.24(A)(1)(e), the probate court has exclusive jurisdiction to appoint and remove guardians. That jurisdiction attaches in any given case whenever application is made for the appointment of a guardian. In re Clendenning (1945), 145 Ohio St. 82, 89,60 N.E.2d 676, citing Shroyer v. Richmond (1866), 16 Ohio St. 455. Therefore, the jurisdiction of the probate court attached in July 2002, when Appellees filed the initial application for guardianship.
 {¶ 16} Under R.C. 2151.23(A)(1), the juvenile court has exclusive original jurisdiction "[c]oncerning any child who on or about the date specified in the complaint * * * is alleged * * * to be * * * a delinquent, unruly, abused, neglected, or dependent child * * *." Therefore, the juvenile court's jurisdiction attaches at the time a complaint is filed alleging that a child is delinquent, unruly, abused, neglected or dependent. In this case, a complaint was filed on September 13, 2002,[3] alleging that Hunter was neglected and/or dependent. Therefore, the juvenile court obtained jurisdiction over Hunter on September 13, 2002.
 {¶ 17} In In re Poling, 64 Ohio St.3d 211, 1992-Ohio-144,594 N.E.2d 589, the Supreme Court of Ohio was asked to decide whether a juvenile court has jurisdiction to consider the question of custody of dependent children where custody had previously been determined and granted by another court under a divorce decree. The Court concluded that, although a court which renders a custody decision in a divorce case has continuing jurisdiction to modify that decision, the juvenile court also has jurisdiction to make custody awards related to children who are properly subject to its jurisdiction. 64 Ohio St.3d at 215. The Supreme Court concluded that the two courts had concurrent jurisdiction and, therefore, the juvenile court's custody award was not void for lack of jurisdiction. Id. Likewise, we conclude that the probate court and the juvenile court had concurrent jurisdiction over Hunter at the time the probate court issued the letters of guardianship.
 {¶ 18} Appellant has directed this Court to In re Brinegar
(1959), 160 N.E.2d 589, to support her contention that once the juvenile court assumed jurisdiction over Hunter based on the filing of the neglect/dependency action, the probate court lacked jurisdiction to grant letters of guardianship over Hunter. However, Brinegar is clearly distinguishable.
 {¶ 19} In Brinegar, the Butler County Probate Court concluded that it was without jurisdiction to grant letters of guardianship over a minor because the juvenile court had previously placed that child in the permanent custody of the county children's services department. The court held that "once a Common Pleas Court has made an order affecting custody of children, that said order is continuing and that said Court retains jurisdiction." Id. at 591. Unlike in Brinegar, here there is no evidence in the record that the juvenile court made a permanent custody determination such that it was vested with sole jurisdiction over Hunter.
 {¶ 20} Therefore, we conclude that the probate court retained jurisdiction over Hunter in the absence of the juvenile court order adjudicating him a neglected and/or dependent child and a dispositional order establishing a custodial placement. Appellant's fourth assignment of error is overruled.
 {¶ 21} However, we do find merit in Appellant's second assignment of error as we conclude that the trial court should have granted Appellant's Motion for a New Trial under Civ.R. 59(A)(1).
 {¶ 22} Under Civ.R. 59(A), "[a] new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial; * * * In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown."
 {¶ 23} The purpose of Civ.R. 59(A) is to empower the trial court to prevent a miscarriage of justice. Malone v. Courtyard by MarriottL.P. (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242. We will not reverse a trial court's denial of a motion for new trial absent an abuse of discretion. Shark v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307,649 N.E.2d 1219; Taylor v. Ross (1948), 150 Ohio St. 448, 83 N.E.2d 222. An abuse of discretion implies that a court's ruling is unreasonable, arbitrary or unconscionable; it is more than a mere error in judgment.Richard v. Seidner (1996), 76 Ohio St.3d 149, 666 N.E.2d 1134; Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 24} The term "irregularity" in the context of a motion for a new trial is historically described as "very comprehensive," and a departure from the due proceeding whereby a party, "with no fault on his part, has been deprived of some right or benefit otherwise available to him." Sherwin-Williams Co. v. Globe Rutgers Fire Ins. Co. (1912), 20 Ohio C.C.(N.S.) 151.
 {¶ 25} We conclude that the court abused its discretion in denying Appellant's motion for a new trial. First, we conclude that the court's determination that Appellant had actual notice of the guardianship hearing on October 4, 2002 is unreasonable. Appellant testified that she did not receive notice and, although Appellees testified that they provided the notice to Appellant, there is clearly confusion as to which notice was provided given that there were two separate hearing dates in the probate action and at least two hearings in the juvenile action. Moreover, it seems illogical that Appellant would appear for the 9:00 a.m. hearing but not the 8:00 a.m. hearing on the same day involving the same issues if she received notice of both hearings.
 {¶ 26} Further, we find the court's conclusion that Appellant waived her right to notice is not supported by the record. Appellant appeared before the court on September 3, 2002 and indicated her objection to the appointment of Appellees as guardians of Hunter. At that point, the court granted a continuance specifically so Appellant could retain counsel to represent her at the hearing. However, in ruling on Appellant's motion for a new trial, the court found that she had waived her right to notice of the new hearing date. However, her waiver of notice applied to the initial hearing, where she in fact appeared and indicated that she wanted to withdraw her consent. It defies logic to grant a continuance of a hearing date so an interested party may obtain representation for that hearing but then determine that the same party waived her right to notice of that continued hearing based upon an earlier, but subsequently withdrawn, waiver. For these reasons, we sustain Appellant's second assignment of error.
 {¶ 27} Because we have sustained Appellant's second assignment of error, Appellant's first and third assignments of error are rendered moot. App.R. 12(A)(c). This matter is remanded to the trial court for further action consistent with this opinion.
JUDGMENT REVERSED AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that Appellant recover of Appellees costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Probate Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] It appears from our review of the record that Appellant was confusing the events incident to her initial appearance in the juvenile action with those incident to her initial appearance in the probate action. The transcript of the September 3, 2002 hearing clearly reflects that Appellant did not have counsel at that time and that Ms. Stout was not present.
[2] The trial court's finding that Appellant had secured counsel prior to the September 3, 2002 hearing is not supported by the transcript from that hearing or the journal entry granting Appellant and Fisher's request for a continuance of the September hearing "in order to engage counsel * * *." Presumably, the court based this finding on the confusing testimony of Appellant at the motion hearing.
[3] The parties apparently do not dispute that the complaint was filed sometime between September 3 and October 4, 2002. We accept Appellant's statement that the complaint was filed on September 13, 2002 for ease of discussion. For our purposes, the date of filing of the juvenile complaint is irrelevant so long as it occurred prior to the probate court's entry of guardianship.